CITY OF ORANGE, PROSECUTOR-RESPONDENT, v. WILLIAM J. DeSTEFANO AND LEONARD C. MINDO, DEFEND-ANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued December 16, 1957—Decided January 16, 1958.

408

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. Harry Kay* argued the cause for defendants-appellants.

*Mr. Edmond J. Dwyer* argued the cause for prosecutor-respondent.

*Mr. David Landau,* Deputy Attorney-General, argued the cause for defendant-respondent Department of Civil Service (*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey, attorney).

The opinion of the court was delivered by

FREUND, J. A. D.   Defendants appeal pursuant to *R. R.* 4:88–8 from an order of the Civil Service Commission affirming disciplinary action taken by the respondent, City of Orange, against the appellants, patrolmen employed by the respondent.

The following essential facts are disclosed by the testimony.   Defendants were appointed patrolmen on the Orange police force on December 1, 1954.   Shortly after midnight of June 25, 1956, they met at police headquarters where De Stefano had just completed his tour of duty for the preceding day.   Mindo had been off duty on June 25, 1956, and had requested De Stefano "to help him pick up some used lumber."   They proceeded in Mindo's car to the rear area of the Sun Electric Products, Inc., premises at 41 Lincoln Avenue in Orange, New Jersey, some 250 feet from

the sidewalk, where they gathered about eight pieces of 2″ x 4″ lumber in eight-foot lengths, which they placed on a metal bracket on top of the car and secured with rope. Mindo then drove the car, with the lumber, out of the driveway to Lincoln Avenue, where by coincidence they were seen by Mayor Russell L. Riley, who was also the director of public safety, and members of the Orange Housing Authority, who had just concluded a business meeting. Anthony G. Cataldo, a member of the authority, owns property and conducts his business at 39 Lincoln Avenue, adjoining the plant of the Sun Electric Products. He saw the Mindo car, with the lumber, coming out of the driveway and with the other officials in his car he followed the Mindo car down Lincoln Avenue.

The testimony does not disclose whether Mindo or De Stefano knew they were being followed by the Cataldo car. Mindo's car continued on Lincoln Avenue, turned into Mechanic Street, and then to Scotland Road, Gleeb Street, Valley Road, and into Whittingham Place, in West Orange, where Cataldo drove his car alongside Mindo's car and both cars stopped. The names of the various streets are of no particular significance but indicate the numerous turns made by Mindo within a short distance. Mindo testified his car was going only 25 miles per hour, although there was other testimony that he was traveling at an estimated speed of between 30 and 50 miles per hour. Cataldo testified that his car was going 40 miles per hour.

Cataldo told Mindo that the lumber was his property and ordered him to return it, which he did. When Cataldo returned to 39 Lincoln Avenue, he told Mindo that he should not have taken the lumber and Mindo said that he had permission to remove it. When Mayor Riley asked both Mindo and De Stefano if they had obtained permission to take the lumber, and they said they had not, he ordered both suspended from duty. The facts are further elucidated hereafter.

Formal charges were preferred against Mindo and De Stefano for the infraction of several departmental regula-

tions, all emanating from one specific act of misconduct, as follows:

"* * * you did violate the following Rules of Discipline as set forth in the 'Manual of Rules and Regulations of the Orange, N. J., Police Department.'
' 4. Any act or omission contrary to good order and discipline.'
' 7. Conduct contrary to good order and discipline.'
'25. Violation of any Criminal Law.'
'27. Conduct unbecoming a gentleman and an Officer.
28. Conduct subversive of the good order and discipline of the Police Department.'
Specifically, you are charged with appropriating to your own use, certain lumber owned by the Sun Electric Products Inc., of #41 Lincoln Avenue, Orange, New Jersey, by entering upon the premises, without permission of the owner, on date of June 26, 1956 and while in said premises removing and placing certain lengths of lumber on a carrier on the roof of a motor vehicle, and thereafter transporting said lengths of lumber from the premises of said Sun Electric Products Inc."

After a full hearing before the mayor, as the director of the department of public safety, he dismissed Mindo and suspended De Stefano without pay for a period of four months. Defendants appealed to the Civil Service Commission for a *de novo* review, pursuant to *R. S.* 11:22–38 as amended and *R. S.* 11:22–39. The Commission designated two of its members, Edward M. Gilroy and Harry A. Walsh, to take the testimony and deliver the opinion of the Commission. They concluded the hearing on January 24, 1957 and on June 4, 1957 they rendered their "Findings, Conclusion and Order" affirming in all respects the decision of the director of public safety. They concluded that the removal of Mindo should be sustained, and De Stefano having acted on the assurance of Mindo that permission for the removal of the lumber had been received from the owner, he was therefore "totally indiscreet."

On this appeal defendants argue primarily that the Civil Service Commission failed to perform its statutory function, and also that the preponderance of the probabilities to be drawn from the testimony is inconsistent with guilt and consistent with innocence.

The procedural attack on the order under appeal relies primarily on the argument that despite the fact that only two Commissioners heard the testimony, a reading of the findings, determination and order appears to indicate that the Civil Service Commission as a whole participated in the findings, determination and order, and if this is so the determination is a nullity. The respondent, Civil Service Commission, states that this factual conclusion is incorrect and unwarranted, and that the decision was arrived at solely by the two Commissioners who presided at the hearing and delivered the opinion of the Commission. The appeal attacks the affidavit of the Chief Examiner and Secretary of the Commission which expressly states, "This case was decided by Commissioners Edward M. Gilroy and Harry A. Walsh who were assigned as the two hearing Commissioners." The affidavit further states, "The opinion which was delivered represents solely their decision in this case."

It has become axiomatic in the area of administrative law that "the one who decides must hear." *Morgan v. United States,* 298 *U. S.* 468, 56 *S. Ct.* 906, 912, 80 *L. Ed.* 1288 (1936); *McAlpine v. Garfield Water Commission,* 135 *N. J. L.* 497, 500, 171 *A. L. R.* 172, 174 (*E. & A.* 1947). But see *United States v. Morgan,* 313 *U. S.* 409, 422, 61 *S. Ct.* 999, 1004, 85 *L. Ed.* 1429 (1941).

There is specific legislative authority for the entire Commission, "either sitting as a body or through one or more of its members," to hear appeals and render decisions. *R. S.* 11:15–4, *N. J. S. A.* 11:2A–1 and *N. J. S. A.* 11:5–1(*d*). The legislative policy provides that one or some of the members may be designated to hear the testimony and decide appeals for the full Commission. *City of Asbury Park v. Department of Civil Service,* 17 *N. J.* 419, 422 (1955). See *Davis, "New Jersey's Unique Conception of 'Fair Play' in the Administrative Process,"* 10 *Rutgers L. Rev.* 660 (1956). The *Asbury Park* case enunciated the general rule that a commissioner who does not hear all the testimony may not participate in the decision.

■ It is clear from the recitation in the Commission's order that only Commissioners Gilroy and Walsh heard the testimony and decided the controversy. If any doubt exists, it is dispelled by the affidavit which recites that only these two Commissioners heard and decided the case. We suggest and recommend that in the future, to remove any doubt, the order clearly state not only who participated in the hearing of testimony, but also who participated in the decision-making process, where less than the full Commission takes part in the appeal. However, in the instant case it is clear beyond any question that only the two Commissioners heard all of the voluminous testimony, which consumed several days of hearings, and that they, and they alone, rendered the determination contained in the order under appeal. The order is jurisdictionally unassailable.

■ The defendants in their brief allude to two other procedural objections, *viz.*: failure of respondent to comply with the requirement of *R. S.* 11:15–6 that the decision be rendered within 15 days after the completion of the hearing, and that *R. S.* 11:1–10 and *R. S.* 11:25–2 require that the full Commission, or at least a quorum, shall hear and decide the case.

There is no merit to either objection. It was obviously the intention of the Legislature that the Commission should file its decision without undue delay. To nullify the Commission's decision solely on the ground that it was not filed within the 15-day period would result in an injustice, not only to the defendants but to the agency representing the public. The identical question was considered in *Dutcher v. Department of Civil Service,* 7 *N. J. Super.* 156, 161 (*App. Div.* 1950), and it was held that the 15-day requirement is directory and not mandatory, that issue having been settled in *Temple v. Storch Trucking Co.,* 3 *N. J.* 42, 45 (1949). To hold otherwise would stifle the administrative process, which requires that litigation be as expeditiously disposed of as is consistent with adequate consideration by the decision makers.

■ The second objection that a quorum of the Commission did not hear the testimony and make a determination after hearing appears to be based upon an observation in *City of Asbury Park v. Dept. of Civil Service, supra* (17 *N. J.* at *page* 422), where it was said:

> "* * * *R. S.* 11:25–2 suggests that Civil Service Commission hearings in municipal disciplinary cases such as this should be heard by the full commission, or at least by a quorum constituted as provided by *R. S.* 11:1–10."

*N. J. S. A.* 11:2A–1 provides that appeals from disciplinary action by municipal and county appointive bodies are governed by the same provisions as relate to appeals by employees in the state service, *R. S.* 11:15–2 to 6. *R. S.* 11:15–4 is incorporated by reference in *N. J. S. A.* 11:2A–1 and expressly states that the Commission shall "hear the person sought to be removed either sitting as a body or through one or more of its members." *Weaver v. New Jersey Dept. of Civil Service*, 6 *N. J.* 553, 556 (1951). In support of the procedural validity of its action the Commission relies on *N. J. S. A.* 11:5–1(*d*) which enumerates its various duties and specifically grants to it the right to "hear appeals, either as a body or through one or more members designated by a majority thereof to hear such appeals * * * and render decisions thereon * * *." Defendants' argument that "the full commission or at least a quorum" is required both to hear and to decide is conclusively refuted by the provisions of *R. S.* 11:15–4 and *N. J. S. A.* 11:5–1(*d*).

The defendants also rely on *R. S.* 11:25–2. It has no applicability to the instant circumstances since it deals with a summary review by any citizen of the action taken by local bodies or officers and the appeal is brought under *R. S.* 11:22–38, as amended and *R. S.* 11:22–39 as stated in the petition of appeal. It does not purport to review a proceeding by the adversely affected employee and is not concerned solely with "suspension, removal, fine or reduction of employees from office." *R. S.* 11:25–1. These sections are

to be read with *R. S.* 11:15–4 which deals with appeals by the disciplined employee, and is made applicable to local appointive agencies by *N. J. S. A.* 11:2A–1. The provisions of *R. S.* 11:15–4 are here applicable, especially in view of the more general provisions of *N. J. S. A.* 11:5–1 dealing with the enumerated duties of the Commission. The statutory policy comports with the rules of the Civil Service Commission.

The defendants contend that Mayor Riley lacked authority to sit in judgment by reason of his presence at the time and place of the happening of the incident. They argue that a "concentration of prosecution and judicial powers in one person sitting as a statutory body and a statutory appeal * * *" does not permit of an impartial determination. Regardless of whether the director acted in both capacities of prosecutor and decider, these functions were not involved in the determination here under review— the order of the Civil Service Commission. That agency in no way acts as "prosecutor" but solely in a *quasi*-judicial capacity as an administrative tribunal considering the entire matter *de novo*. *Handlon v. Town of Belleville,* 4 *N. J.* 99, 104, 105 (1950).

Where two independent *quasi*-judicial bodies have heard the testimony and have examined the facts, both reaching the same conclusion, we will not ordinarily disturb the findings, unless there is insufficient evidence to support the order under review. *Reis v. Breeze Corporations, Inc.,* 129 *N. J. L.* 138, 142 (*Sup. Ct.* 1942); *Coronato v. Public Service Coordinated Transport,* 4 *N. J. Super.* 1 (*App. Div.* 1949). There was ample credible evidence to support the findings against, and the dismissal, of Mindo.

The impropriety of his conduct need be only briefly stated. The specific misconduct charge was "appropriating" to his use without permission of the owner certain pieces of lumber owned by Sun Electric, by entering upon its premises. Mindo admitted taking the lumber, and testified that a "short stocky-built man" had given him permission to take some discarded lumber lying alongside the Sun Electric

building. Although given every possible opportunity to do so, he was unable to produce the described man as a witness or to identify any such individual. Both the director and the two Civil Service Commissioners disbelieved his testimony and referred to several factors which warranted such disbelief. Those factors were essentially as follows: Mindo said the permission to take the lumber was given to him at about 5 P. M. but he did not pick up the lumber until after midnight; discrepancies in his testimony concerning the time when Mindo requested De Stefano to assist him in removing the lumber; the circuitous route taken by Mindo after he and De Stefano left the premises of the Sun Electric plant in a direction away from his ultimate destination instead of toward his home, and his inability to identify any employee of Sun Electric as the one who allegedly gave him permission to take the lumber, despite an exhaustive investigation by the police department to locate the "short stocky-built man." Apart from the incidental fact that his failure to comply with his sworn duty to protect property was far short of that standard of conduct the public has a right to expect of a policeman, both the director and the Civil Service Commissioners found as a fact that Mindo appropriated the lumber to his own use without permission of the owner and was accordingly found guilty as charged. The guilt of Mindo was abundantly established from the evidence and his dismissal was clearly warranted.

The charge against De Stefano, the finding of his guilt, and the part he played gives us some concern. The Commission found as a fact that Mindo had requested De Stefano to help him place the lumber on the roof of his car. De Stefano testified, without contradiction, that Mindo told him he had been given permission to take some of the used lumber. The lumber was concededly taken only for Mindos benefit, De Stefano merely assisting in accordance with the arrangement made with Mindo. In its findings, the Commission stated that although "De Stefano acted on the word of appellant Mindo that permission of the owner

of the lumber had first been granted before its removal he was, to say the least, totally indiscreet." That is the extent of its discussion of De Stefano's culpability.

The opinion of the director of public safety, however, devoted much more attention to De Stefano. The director states that one of the disputed questions is whether "De Stefano had reason to know or believe that Mindo had obtained permission from someone * * * to take the lumber." He then held in conclusion that although the uncontradicted testimony was to the effect that De Stefano relied on Mindo's representations, even giving him the "benefit of doubt," the hour of taking the lumber, the devious route traveled by Mindo, and the speed traveled should have "certainly convinced De Stefano that something was amiss and it was his duty to act and conduct himself accordingly, even to the point of arresting Mindo if the latter refused to stop the car had he been ordered to do so by De Stefano." De Stefano was therefore found guilty of having violated certain departmental rules as follows: Rule 4, "Act or omission contrary to good order and discipline"; Rule 7, "Conduct contrary to good order and discipline"; Rule 27, "Conduct unbecoming a gentleman and an officer"; and Rule 28, "Conduct subversive of the good order and discipline of the Police Department," and not guilty of violating Rule 25, "Violation of any criminal law."

It is observed that there is no basic finding that De Stefano did not rely on the representations of Mindo, but only the intimation that such reliance upon Mindo was unreasonable and some question should have arisen in his mind, he should have known "something was amiss."

At the oral argument counsel for De Stefano raised for the first time the point that he was never found guilty of the specific charge laid against him in the notice of hearing. We entertained the argument on grounds of substantial justice and plain error, giving adverse counsel the opportunity to file supplemental briefs on the question. These have been filed and carefully considered. The specific charge against De Stefano was for appropriating to his own use

certain lumber, the same as the charge against Mindo. The findings of the Civil Service Commission were merely that his conduct was "indiscreet." There was no adjudication of guilt of the specific charge preferred against him by either the director of public safety or the Commission.

Where an employee who is entitled to notice of "cause" and hearing before discharge is tried on one specific charge, as here, and is found not guilty thereof but solely of other charges, never specified or actually tried before either the original hearer or on appeal to the Commission, the penalty imposed will be set aside. *Kramer v. Civil Service Commission*, 120 *N. J. L.* 599 (*Sup. Ct.* 1938). We do not agree with counsel for the Commission in their argument by supplemental brief, to the effect that the conduct of which De Stefano was found guilty by the public safety director can be regarded as the charge for which he was tried before the Commission. It is, moreover, difficult to understand just what specific offense in terms of conduct he was found guilty of by the director. Was it that he failed to order Mindo to return the lumber? Or not arresting him? In any event, the specific charge originally laid against him was the only one upon which a valid adverse finding in either tribunal could have been made, in the absence of amendment or other fair notice of a change of the charge.

Nor can we agree with the position of the city that the charge of "appropriating to your own use, certain lumber owned by" Sun Electric was merely a charge additional to other charges, *i. e.*, the general categorical descriptions of violations of Rules 4, 7, 25, 27 and 28. Those did not constitute charges, nor were they formulated as such in the notice of hearing. They merely identified the rules alleged to have been violated and their broad descriptive substance. They were reduced to specificity by the language: "Specifically, you are charged with appropriating to your own use, certain lumber" *etc.* That, and that only, was the charge made and the only one which can fairly be regarded as having been tried. The interests of substantial justice require a

reversal of the order as to De Stefano on this point. Accordingly, we reverse the order of the Commission as it applies to De Stefano and order that he be reinstated with back pay.

The order under review is affirmed as to the dismissal of Mindo, but reversed as it affirms the disciplinary action taken against De Stefano, and it is ordered that De Stefano be reinstated with back pay.