91 N.J. Super. 54 (1966)
219 A.2d 187
WOODBRIDGE TOWNSHIP EDUCATION ASSOCIATION, INC., PLAINTIFF,
v.
BOARD OF EDUCATION OF THE TOWNSHIP OF WOODBRIDGE, DEFENDANT. RAYMOND A. PETERSON, INDIVIDUALLY AND AS PRESIDENT OF WOODBRIDGE TOWNSHIP FEDERATION OF TEACHERS, LOCAL 822, AMERICAN FEDERATION OF TEACHERS, AFL-CIO, AND WOODBRIDGE TOWNSHIP FEDERATION OF TEACHERS, LOCAL 822, AMERICAN FEDERATION OF TEACHERS, AFL-CIO, AN UNINCORPORATED LABOR ORGANIZATION, AND WOODBRIDGE TOWNSHIP EDUCATION ASSOCIATION, INC., PLAINTIFFS,
v.
THE BOARD OF EDUCATION, TOWNSHIP OF WOODBRIDGE, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 31, 1966.
*55 Mr. Robert F. Dato for plaintiff Woodbridge Township Education Association, Inc. (Messrs. Kovacs, Anderson, Horowitz & Rader, attorneys).
*56 Mr. David Friedland for plaintiffs Raymond A. Peterson et al. (Messrs. Friedland, Schneider & Friedland, attorneys).
Mr. William H. Gazi for defendant (Mr. Francis C. Foley, attorney).
FURMAN, J.S.C.
Defendant Board of Education of Woodbridge Township moves for a dismissal of these consolidated declaratory judgment actions on the ground of failure to exhaust administrative remedies. The State Commissioner of Education has original jurisdiction over "all controversies and disputes arising under the school laws." R.S. 18:3-14.
Legislation approved and effective on February 15, 1966 as chapter 236 of the Laws of 1965 precipitates this litigation. By its terms teacher salary policies adopted by a board of education are binding and may not be cut by the board or its successors for two years, or by the voters, the board of school estimate, the municipal governing body or bodies or the Commissioner of Education in any subsequent school budget, including specifically the budget adopted for the school year starting July 1, 1966.
Woodbridge Township is a chapter 7 school district. Defendant board of education complied with the governing statute, N.J.S.A. 18:7-77.1 et seq., in the formulation of the school budget for 1966-67 and its submission to the voters. After a public hearing on January 13, 1966, the board on January 19, 1966 approved the budget for submission to the voters. The voters rejected the budget at the annual election of February 8, 1966. Two days later the board adopted a resolution to resubmit the same budget. The voters again rejected it on February 23, 1966.
The township council reviewed the school budget in conference with the board and on March 1, 1966 adopted a resolution reducing the proposed current expenses by $700,000, without itemization. The budget twice approved by the board and twice defeated at the polls had provided a uniform salary increase for teachers of $400 per year. On March 16, *57 1966 the board filed a petition with the Commissioner of Education to review and set aside the township council resolution of March 1, 1966 because of failure to certify sufficient amounts for a "thorough and efficient system of schools in the district." At a subsequent meeting on March 21, 1966 the board adopted a resolution approving a uniform salary increase for teachers of $300 per year.
Plaintiffs, comprising or representing two associations of teachers within Woodbridge Township, maintain that the salary increase of $400 per year proposed in the budget was frozen by the enactment of chapter 236 of the Laws of 1965. Statutory construction is a pure issue of law, according to their contention, justifying the by-passing of administrative review. Nolan v. Fitzpatrick, 9 N.J. 477 (1952); Deaney v. Linen Thread Co., 19 N.J. 578, 581 (1955); Wilbert v. De Camp, 72 N.J. Super. 60, 68 (App. Div. 1962); but see Roadway Express, Inc. v. Kingsley, 37 N.J. 136, 141 (1962).
The term "salary policy" in chapter 236 is novel within Title 18; salary policies and schedules fixed irrevocably by boards of education, as part of or separate from annual school budgets, are specifically authorized for the first time. Prior to this enactment boards of education approved teacher salary increases only in their annual budgets and subject to ratification by the voters, the board of school estimate, the municipal governing body or bodies, or the Commissioner of Education.
Plaintiffs attach crucial significance to chapter 236's date of enactment on February 15, 1966 and its specific applicability to school budgets for the school year starting July 1, 1966. The legislation would be nugatory until 1967, plaintiffs argue, unless teacher salary increases provided in school budgets submitted to the voters in the annual election of February 8, 1966 are safeguarded against any cut, with or without electoral ratification.
The search for the legislative intent in the timetable of legislative passage and gubernatorial approval is baffling. Introduced as Senate Bill No. 248, the Senate passed this *58 legislation on May 3, 1965, and the General Assembly by emergency resolution on May 24, 1965. Exercising his constitutional authority, the Governor signed Senate Bill No. 248 into law within 45 days after the adjournment of the 189th Legislature on January 11, 1966. Apparently to resolve any uncertainty, Senate Bill No. 265, amending chapter 236, was introduced on March 7, 1966 and passed by the Senate a week later. The new amendment would freeze salary policies and schedules in budgets adopted for the school year starting July 1, 1967  not earlier.
George Rybak, president of the defendant board, has filed an affidavit with the court outlining the budget procedure followed by defendant board during recent years. According to his affidavit, teacher salary increases were not fixed irrevocably as a matter of policy when submitted to the voters. The proposed budgets contained recommendations for teacher salaries and other items, subject to review and reappraisal upon rejection of the school budget by the voters. R.S. 18:7-82 is consistent in its proviso that after two defeats by the voters, the municipal governing body or bodies consult with the school board before certification of a school budget amount to the county board of taxation. Rybak's affidavit asserts further that the board took no action whatsoever between the enactment of chapter 236 and the second electoral defeat. Thus, a fact question is raised whether the teacher salary increases approved by the board on January 19 and February 10, 1966 embodied a salary policy inviolate thereafter within the legislative intendment.
The result urged by plaintiffs would be extraordinary if the assertions in Rybak's affidavit are ultimately found to be facts. A school board, without direct knowledge or control over municipal taxes or other financial matters, would be held, retroactively, to have established a policy which may necessitate the levying of additional taxes, although by the declaration of its president it had not intended any irrevocable policy.
*59 Plaintiff Peterson argues further that chapter 236 of the Laws of 1965 is superfluous because the mandate of the State Constitution in Article I, paragraph 19, enforces good faith bargaining between a governmental subdivision and its employees and thus invalidates a "unilateral rescission" by the board of education. The recognized meaning of the constitutional guarantee of the right of public employees to organize and to present grievances and proposals through representatives of their choosing is to the contrary. Both the courts and the Attorney General have ruled consistently that public employees in this State do not enjoy the right of collective bargaining, reasoning inter alia that an agreement purportedly fixing their salaries would be a nullity without legislative appropriation or other lawful provision of the funds. Delaware River and Bay Auth. v. International Org., etc., 45 N.J. 138, 147, 148 (1965); N.J. Turnpike Auth. v. Amer., etc., Employees, 83 N.J. Super. 389, 397 (Ch. Div. 1964); Attorney General's Memorandum Opinion to South Jersey Port Commission, dated October 20, 1954. I cannot construe Article I, paragraph 19, of the State Constitution to have vested a uniform teacher salary increase of $400 per year in Woodbridge Township, impervious to any subsequent reduction by defendant board itself, or by the voters, the township council or the Commissioner of Education, because of the plaintiffs' participation in discussions and negotiations durng the school budget formulation.
The legislative policy favoring uniform state-wide determinations of school law controversies by the Commissioner of Education is served by the dismissal of the two declaratory judgment actions on the ground of failure to exhaust administrative remedies. It is so ordered.