125 N.J. Super. 131 (1973)
309 A.2d 89
MARILYN WINSTON AND SOUTH PLAINFIELD EDUCATION ASSOCIATION, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, APPELLANTS,
v.
BOARD OF EDUCATION OF THE BOROUGH OF SOUTH PLAINFIELD IN THE COUNTY OF MIDDLESEX, RESPONDENT, STATE BOARD OF EDUCATION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 14, 1973.
Decided August 9, 1973.
*134 Before Judges LORA, ALLCORN and HANDLER.
*135 Mr. Abraham L. Friedman argued the cause for appellants (Rothbard, Harris & Oxfeld, attorneys).
Mr. Robert J. Cirafesi argued the cause for respondent Board of Education of South Plainfield.
Mr. Lewis M. Popper, Deputy Attorney General argued the cause for respondent State Board of Education (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
HANDLER, A.J.A.D.
Appellant Marilyn Winston was an elementary school teacher employed by respondent Board of Education of South Plainfield (board). She had been employed in a nontenured capacity under annual contracts for each of the school years 1968-1969, 1969-1970 and 1970-1971. Her employment contract was not renewed for the year 1971-1972, and as a result she did not acquire tenure.
An evaluation report was submitted by Winston's principal on or about February 23, 1971. The board thereafter determined not to renew Winston's employment contract. Among other matters, the report contained "administrator's remarks" to the effect that Winston had been overly critical of administrative policy and action, had not sufficiently focused her attention on her duties and had not supported administrative policy and the like. On March 11, 1971 Winston invoked the grievance procedures provided in the current "collective bargaining agreement" between the board and appellant South Plainfield Education Association, the recognized exclusive representative of teachers and certain other employees of the board under the New Jersey Public Employer-Employee Relations Act, L. 1968, c. 303; N.J.S.A. 34:13A-1 et seq.
The gist of her grievance was the unfavorable evaluation report and, in particular, as set forth in Part 1, a claim that the report was "unconstitutional by penalizing the aggrieved [i.e. Winston] for her proper exercise of the First *136 Amendment Guarantees of freedom of expression, etc." In the processing of her grievance Winston was represented by the Association. The grievance was taken through four administrative levels, including an appeal to the local board on April 30, 1971. The board concurred in the conclusion of the superintendent that the matters complained of were "non-grievable" and it rejected the grievance noting, in part, that "[a]lthough the grievance is couched in language suggesting violations of a constitutional dimension, it appears that the primary distress of the teacher is the possibility of her non-re-employment in the school system." It indicated further that the board was under "no compulsion to announce reasons for not re-hiring a probationary employee" and that Winston had not given any detailed support for her request for a hearing. The board also stated that it was "unable to conclude that the evaluation report submitted by Mr. Reilly [the principal] was composed with the intention of, or that it has a substantial tendency to, abridge Mrs. Winston's right to free speech * * *."
On May 18, 1971, about the same time that the board's decision was rendered, a list of teachers to be rehired was approved and Winston was not among them. Thereafter, on or about June 16, 1971, the Association on behalf of Winston endeavored to invoke the fifth level for processing grievances by demanding arbitration. It was alleged that there had been a denial of constitutional rights as well as a recommendation that Winston not be re-employed. At an arbitration hearing conducted on October 14, 1971 the issue of arbitrability was argued and the board was given the opportunity to seek judicial relief on this issue. It then filed an action on November 16, 1971 in the Superior Court, Chancery Division, which issued an injunction on February 8, 1972 restraining the arbitration proceedings until administrative remedies had been exhausted.
There followed a petition of appeal to the Commissioner of Education. The board filed a motion to dismiss which was *137 argued before a Deputy Commissioner who presented a report to the Commissioner. The Commissioner ruled that the Association had no standing as a party to the proceedings and determined that Winston's appeal be dismissed. Both Winston and the Association appealed this determination to the State Board of Education which, after a referral of the matter to its Law Committee, affirmed the decision of the Commissioner.

I
Appellants contend that the Commissioner of Education erred in failing to afford them the opportunity to object to the report of the hearing examiner before issuing his decision. They also contend that the State Board of Education committed comparable error by not affording them the opportunity to object to the report of its Law Committee prior to the rendering of its decision.
The decision of the Commissioner makes it quite clear that he was furnished with and relied upon a report of the Deputy Commissioner designated as the hearing examiner who heard the appellants' petition in the first instance.[*] Respondents argue that there was no requirement that the report of the hearing examiner be furnished the parties prior to its utilization by the Commissioner in deciding the controversy. Among the reasons advanced were that the Commissioner of Education is not the "head of the agency" within the meaning of N.J.S.A. 52:14B-10(c) and consequently the report of a hearing examiner designated by the Commissioner is not subject to the mandate of that statute; also, that since the Commissioner's decisions are *138 reviewed by the State Board of Education, the parties there have the opportunity "to except and object to the findings of fact and conclusions of law of both the Departmental hearing examiner and the Commissioner of Education * * *."
These arguments carry no weight. The law is firmly settled where a final decision is made by one who did not hear the evidence but who relies in part upon a report of a hearing officer, there is a risk that the ultimate decision may be based upon findings not supported by the evidence. To secure essential fair play and to minimize the risk of fundamental error it is necessary that
* * * prior to its submission to the deciding officer the hearer's report be made available to the parties and * * * they then be given an opportunity to correct any mistakes that may appear in the report. This simple requirement, while imposing no hardship on the agency, does protect the individual against the strong possibility of a miscarriage of justice or the suspicion thereof. [Mazza v. Cavicchia, 15 N.J. 498, 523-524 (1954)]
There can be not the slightest doubt that this axiom of administrative due process is applicable to hearings before the Commissioner of Education. See In re Masiello, 25 N.J. 590, 604 (1958); cf. N.J.A.C. 6:24-1.13.
The decisional law in this respect has been underscored and codified by the Administrative Procedure Act, L. 1968, c. 410, particularly N.J.S.A. 52:14B-10(c), viz.:
(c) When a person not empowered to render an administrative adjudication is designated by the head of the agency as the presiding officer, his recommended report and decision containing recommended findings of fact and conclusions of law shall be filed with the agency and delivered or mailed to the parties of record; and an opportunity shall be afforded each party of record to file exceptions, objections and replies thereto, and to present argument to the head of the agency or a majority thereof, either orally or in writing, as the agency may order. The head of the agency shall adopt, reject or modify the recommended report and decision. The recommended report and decision shall be a part of the record in the case.
The requirement that the hearing examiner's report be furnished the parties prior to its submission to the Commissioner *139 for his decision is in no way lessened by the availability of a further administrative review before the State Board of Education. In a given case the Commissioner's decision may well be final. Moreover, even if there is a further appeal, his decision, while not binding, may have a crucial impact upon the State Board of Education. See Quinlan v. Bd. of Ed., North Bergen Tp., 73 N.J. Super. 40, 50 (App. Div. 1962). We conclude, therefore, that appellants were entitled to be furnished with the report of the hearing examiner prior to its submission to the Commissioner for decision.
At the next level the State Board of Education, in accordance with its rules, submitted the appeal for preliminary review by the Law Committee. N.J.A.C. 6:1-4.4 The Law Committee, as required, submitted its report and recommended conclusions to the Board. N.J.S.A. 18A:6-29; N.J.A.C. 6:2-1.4. The Board thereupon rendered its decision for the reasons advanced by the Commissioner of Education.
The procedure followed was defective in not providing the parties the opportunity to address the report of the committee before it was transmitted to the State Board for final action. In re Masiello, supra, 25 N.J. at 605; Quinlan v. Bd. of Ed., North Bergen Tp., supra, 73 N.J. Super. at 53; cf. Redcay v. State Board of Education, 128 N.J.L. 281 (Sup. Ct. 1942).
This serious procedural dereliction cannot be ignored. Respondent suggests that "[t]he State Board never engages in independent fact-finding of its own" and also that the Law Committee is "concerned primarily with an evaluation of the Commissioner's conclusions of law, with an eye only to the reasonableness of the findings of fact." To the contrary, the State Board "is not precluded from making its own independent findings of fact." Quinlan v. Bd. of Ed., North Bergen Tp., supra, 73 N.J. Super. at 51; cf. In re Masiello, supra. And the Law Committee is *140 not restricted in its review to issues of law. There is no basis for the assumption that such a committee through its recommendation may not have a decisive effect upon the eventual decision. N.J.A.C. 6:2-1.4. "Due process requires that the litigant be allowed to make an impressionable contact with the powers of decision." Fifth St. Pier Corp. v. Hoboken, 22 N.J. 326, 337 (1956). Consequently, there was error in the proceedings before the State Board of Education in not making available to the parties the report of the Law Committee, with adequate opportunity to object thereto prior to its submission to the State Board for final action.

II
It is argued that it was error to dismiss the South Plainfield Education Association as a party to the proceedings before the Commissioner of Education. Respondents, in defense of this ruling, take the position that the Association is a "bargaining agent of employees" under L. 1968, c. 303; N.J.S.A. 34:13A-1 et seq., and that the Commissioner does not have the "jurisdiction * * * to hear the complaint of [such] a bargaining agent under the guise of a `controversy and dispute under School law.'" It is also stated that the Association as an organization would not have standing to represent an individual on a "personal grievance simply by virtue of the organization's function in representing that person for certain collective purposes."
In general, disputes involving teachers are cognizable as controversies under the school laws. N.J.S.A. 18A:6-9; e.g., Woodbridge Tp. Ed. Ass'n v. Bd. of Ed., Woodbridge Tp., 91 N.J. Super. 54 (Ch. Div. 1966); Bd. of Education, Garfield v. State Bd. of Education, 130 N.J.L. 388 (Sup. Ct. 1943). In a particular case, however, such disputes might also be the proper subject of grievance procedures adopted pursuant to N.J.S.A. 34: 13A-5.3. If a dispute is grievable in accordance with the *141 terms of a collective bargaining agreement between a board of education and the exclusive employee representative, the latter not only has the right but indeed may be under a duty to process such a grievance and to do so fairly and impartially, where the contract so provides. Cf. Lullo v. International Ass'n of Fire Fighters, 55 N.J. 409 (1970); N.J. Turnpike Emp. Union, Local 194 v. New Jersey Turnpike Authority, 123 N.J. Super. 461 (App. Div. 1973).
Appellants' unilateral initiation of the grievance procedures under the contract does not imply that the dispute should now be regarded as one not amenable to the jurisdiction of the Commissioner as a controversy arising under the school laws. In this case, not all grievable complaints under the collective bargaining agreement are entitled to be resolved ultimately by arbitration. This agreement specifically provides that "[n]o claim by a teacher shall constitute a grievable matter beyond level four or be processed beyond level four [review of Superintendent's decision by Board of Education] if it pertains to * * * [a]ny complaint of a non-tenure teacher which arises by reason of his not being re-employed." If such a complaint cannot by the terms of the operative contract be resolved by means of arbitration, then its ultimate disposition should follow the course applicable to any other controversy or dispute, namely, by successive appeals to the Commissioner of Education and the State Board of Education.
Here Winston's initial complaint focused upon the adverse evaluation report as such. But quite obviously this had a tangible bearing upon her employment status since the report itself recommended that Winston not be re-employed. In fact, her employment was discontinued by the nonrenewal of her contract before her complaint could be taken beyond the level four grievance procedure to arbitration. Her claim was then expanded to include the specific charge that she had not been re-employed and that the nonrenewal *142 of her employment contract was wrongful because of the evaluation report. Thus, by the very terms of the collective bargaining agreement, her claim no longer constituted a "grievable matter" after the decision of the superintendent. It could, therefore, appropriately be considered a controversy or dispute thereafter cognizable by the Commissioner and State Board of Education.
The Association, having been duly selected the exclusive employee representative pursuant to N.J.S.A. 34: 13A-1 et seq., had the authority under the contract to initiate a grievance and process a claim on behalf of an aggrieved teacher such as Winston through the applicable administrative levels. In this posture it would be anomalous to deny the Association the standing to pursue the matter to conclusion. The final disposition of such claims might have an impact which transcends the personal interest of the individual claimant and have repercussions affecting other employees. No sound reason has been advanced why, at the critical and final stages of the administrative machinery before the Commissioner of Education and ultimately the State Board, the very real interest of the Association should be negated and the Association shorn of its status to participate as a party and to represent the interests of the aggrieved employee.
The concern of an exclusive representative of public employees with respect to matters touching their employment is tangible and genuine; it is an interest sufficient to enable such an entity to participate as a party in proceedings before the Commissioner and State Board of Education. N.J.A.C. 6:24-1.6; cf. Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98 (1971). In consequence, it was error for the Commissioner of Education, and on appeal the State Board of Education, to have ruled that South Plainfield Education Association be dismissed as a party to the proceedings.

*143 III
The local Board of Education moved before the commissioner to dismiss the petition for failure to state a cause of action and to plead essential facts. The Commissioner ruled that the allegations of the petition "stand alone" and there was no "offer of proof that the Board failed to renew petitioner's contract because she exercised her right of free speech." Appellants contend that the Commissioner of Education erred in dismissing Winston's appeal without a hearing. Respondents argue that the petition was based upon "bare allegations" and was properly dismissed where "no additional proofs were offered."
A nontenured teacher does not have the right to have an employment contract renewed; nor is such a teacher ordinarily entitled to a statement of reasons for such nonrenewal or to a hearing prior to such action. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Zimmerman v. Board of Education, Newark, 38 N.J. 65 (1962), cert. den. 371 U.S. 956, 83 S.Ct. 508, 9 L.Ed.2d 502 (1963); Donaldson v. Bd. of Ed., North Wildwood, 115 N.J. Super. 228 (App. Div. 1971), certif. granted 59 N.J. 272 (1971). The discretion vested in a board over these matters is extremely broad. Nevertheless, this wide latitude enjoyed by a board of education with respect to such matters as the appointment, transfer, dismissal or nonrenewal of teachers is conditioned upon Fourteenth Amendment limitations. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2964, 33 L.Ed.2d 570 (1972); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); cf. Burlington County Evergreen Park Mental Hospital v. Cooper, 56 N.J. 579 (1970). "[T]he theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected." Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 *144 (1968). School teachers, it has been noted, do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969); cf. Katz v. Board of Trustees of Gloucester County College, 118 N.J. Super. 398, 401 (Ch. Div. 1972). Specifically, it has been recognized that "[n]onrenewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights." Perry v. Sindermann, supra, 408 U.S. at 590, 92 S.Ct. at 2698, 33 L.Ed.2d at 578.
It may be acknowledged that the bare assertion or generalized allegations of infringement of a constitutional right does not create a claim of constitutional dimensions. Cf. Trap Rock Industries, Inc. v. Kohl, 63 N.J. 1 (1973). In this case, however, petitioner's claim of a deprivation of her constitutional rights was adequately detailed and corroborated, sufficient to require consideration of her complaint. Specifically the petition of appeal to the Commissioner set forth several instances in some detail indicating that Winston had questioned policy decisions, made suggestions and recommendations, sought information or reasons for certain administrative decisions, expressed criticisms among teachers concerning certain administrative directives, and the like. These allegations were verified by petitioner. Additionally, while the evaluation report contains other reasons which might justify the recommendation that appellant not be re-employed, the "Administrator's remarks" raise an inference that Winston's speech and expressions were considered too captious and contentious, and that this may have been a material factor in the discontinuance of her employment. Compare Hetrick v. Martin, 480 F.2d 705 (6 Cir. June 15, 1973).
In Perry v. Sindermann, supra, the United States Supreme Court decided that a teacher's lack of tenure or the *145 absence of a contractual right to re-employment as such would not defeat a genuine claim that the nonrenewal of his employment contract was triggered by his public criticism of school administration policies and constituted an infringement upon his constitutional right to freedom of speech. The court's thesis is here apposite, viz.:
In this case, of course, the respondent has yet to show that the decision not to renew his contract was, in fact, made in retaliation for his exercise of the constitutional right of free speech. The District Court foreclosed any opportunity to make this showing when it granted summary judgment. Hence, we cannot now hold that the Board of Regents' action was invalid.
But we agree with the Court of Appeals that there is a genuine dispute as to "whether the college refused to renew the teaching contract on an impermissible basis  as a reprisal for the exercise of constitutionally protected rights." 430 F.2d, at 943. The respondent has alleged that his nonretention was based on his testimony before legislative committees and his other public statements critical of the Regents' policies. And he has alleged that this public criticism was within the First and Fourteenth Amendment's protection of freedom of speech. Plainly, these allegations present a bona fide constitutional claim. For this Court has held that a teacher's public criticism of his superiors on matters of public concern may be constitutionally protected and may, therefore, be an impermissible basis for termination of his employment. Pickering v. Board of Education, supra. [408 U.S. at 598, 92 S.Ct. at 2698, 33 L.Ed.2d at 578]
Here, Winston has made a sufficient showing that the decision by the respondent local board may have been prompted by her exercise of the right of speech protected under the First and Fourteenth Amendments. In this sense she presented a bona fide claim of constitutional stature and was, therefore, entitled to a full evidentiary hearing on this contention before the Commissioner of Education.
For the foregoing reasons the matter is reversed and remanded to the Commissioner of Education for further proceedings in accordance with this opinion. We do not pass upon the additional contention urged on this appeal that appellant should receive her normal salary under N.J.S.A. 18A:6-14. This claim was not raised at any *146 time before the administrative agencies and we decline to consider it on this appeal. Cf. In re E.J. McGovern Dairy Products, Inc., 60 N.J. Super. 163, 168 (App. Div. 1959), aff'd o.b. 31 N.J. 601 (1960).
Jurisdiction is not retained.
NOTES
[*] A request for clarification on this point elicited from the office of the Attorney General the representation that "the hearing officer also assisted the Commissioner of Education in the preparation of the Commissioner's decision itself * * *. In this case, the decision proposed by the hearing examiner is the same as that rendered by the Commissioner."