131 N.J. Super. 528 (1974)
330 A.2d 624
SIMMIE UNDERWOOD, PLAINTIFF-APPELLANT,
v.
NEW JERSEY STATE PAROLE BOARD, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 25, 1974.
Decided December 20, 1974.
*529 Before Judges MICHELS, MORGAN and MILMED.
*530 Mr. Samuel T. Craft, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney; Mr. Arthur Penn, Deputy Public Defender, of counsel and on the brief).
Mr. Joseph T. Maloney, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Lawrence J. Greenberg, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by MILMED, J.S.C., Temporarily Assigned.
Appellant Simmie Underwood appeals from a final decision of the State Parole Board revoking his parole. In 1955 he was convicted of murder in Mercer County and sentenced to imprisonment in the State Prison for life. He was paroled in June 1971 and permitted to reside in Atlanta, Georgia, at his sister's residence, subject to parole supervision by Georgia, pursuant to an approved plan, under the interstate compact for the supervision of parolees and probationers.
On March 6, 1973 a hearing officer in the New Jersey Bureau of Parole, on the basis of reports from the Georgia parole authority and without a hearing, found probable cause that Underwood had violated his parole in four respects, i.e., that (1) he failed to abstain from excessive use of intoxicating beverages; (2) he failed to reside in a place approved by the Bureau of Parole as evidenced by his "missing status from the State of Georgia as of 9/28/72"; (3) he failed to seek employment diligently, and (4) he failed to notify his parole officer of his change of residence and changes of employment. The hearing officer recommended that Underwood be declared delinquent on parole. On March 13, 1973 the New Jersey State Parole Board issued its declaration of delinquency, declaring Underwood to be delinquent on parole as of September 28, 1972. A parole violator warrant was thereupon issued. Underwood *531 was apprehended in Florida while under detention there on another charge and was returned to New Jersey on June 15, 1973.
On July 31, 1973 a hearing officer of the Parole Board conducted a final parole revocation hearing in the matter at the State Prison, at which Underwood was represented by personnel of the Public Defender's Office. He admitted at the hearing that he had a drinking problem and that "I believe, if given the chance, I could, like you say, I would go to the AA and cease to do the drinking and get a job and make another start." He also admitted that he failed to continue to reside in the place approved by the Bureau of Parole, i.e., his sister's residence in Alanta, and that he left Atlanta without his parole officer's permission in July or August of 1972. He claims that at the time he was looking for work and had been promised a construction job in Augusta, Georgia, by a contractor; that he and four other men decided to take the jobs which were so offered; that he did not notify his parole officer that he was going to take a job in Augusta; that he and the four other men were taken by the contractor to a migrant labor camp in Trenton, South Carolina; that he was compelled to work there for about a week and then was transported to another farm in Faison, North Carolina where he was compelled to work for about a month; that from there he was transported to a farm in Pennsylvania and thereafter to another migrant labor camp in Winter Garden, Florida, from which he escaped in December 1972. He says that after his escape he did not notify his parole supervisor of his whereabouts or the circumstances of his disappearance because "I didn't believe they would believe me * * *." He says that he then went to Ocala, Florida and worked there on another farm; that he was arrested there for being drunk, and that as a result of that arrest the local police discovered that he was wanted as a parole violator, and he was returned to New Jersey.
The Parole Board concluded that the evidence at the parole revocation hearing was insufficient to establish the *532 charge that Underwood failed to abstain from excessive use of intoxicating beverages. It did, however, further conclude that the evidence was sufficient to establish the three remaining charges of violation of parole and revoked the parole. At the outset we hold that if the parole violations found by the Board did occur, the Board could reasonably make its determination to revoke parole.
On the present appeal from the revocation Underwood complains that: he was not given a preliminary (probable cause) hearing; he was entitled to a final hearing before the Parole Board itself and not before a hearing officer; he should have been given a copy of the hearing officer's report and an opportunity to file exceptions to it,[1] and the decision of the Parole Board to revoke his parole was unreasonable and arbitrary.
Appellant was not provided a prompt preliminary (probable cause) hearing "at or reasonably near the place of the alleged parole violation or arrest" in accord with the due process requirements set forth in Morrissey v. Brewer, 408 U.S. 471, 485, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484, 496 (1972). New Jersey is a signatory to the interstate compact for supervision of parolees and probationers of one state resident in another state, and has adopted the "uniform act for out-of-state parolee supervision," N.J.S.A. 2A:168-14 to 17. The uniform act has also been adopted by Georgia and Florida. Accordingly, upon his arrest in Ocala, Florida, Underwood should have been promptly given the required preliminary hearing there, or more appropriately in Atlanta, Georgia, where the charges of parole violation emanated. However, in light of Underwood's admissions of parole violations at the final revocation hearing, i.e., admissions that he failed to continue to reside in his sister's residence in Atlanta (the place approved by the Bureau of Parole) and *533 that he failed to notify his parole supervisor of his whereabounts after escaping from a migrant labor camp in December 1972, the failure to conduct such preliminary hearing is not reversible error. Admissions by the parolee to the Parole Board of parole violations "found to be reasonable grounds for revoking parole under state standards * * would end the matter." Morrissey v. Brewer, supra, 408 U.S. at 490, 92 S.Ct. at 2605, 33 L.Ed.2d at 499.
The Parole Board is not required to conduct the revocation hearing itself. It is sufficient if that hearing is conducted by "a `neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers * *." Morrissey v. Brewer, supra, 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499. (Emphasis added). A "neutral and detached" hearing officer for the Parole Board, such as presided at the final revocation hearing in this case, meets this due process requirement.
As noted in Laba v. Newark Board of Education, 23 N.J. 364 (1957):
* * * if administrative tribunals are to be permitted to function effectively they likewise must have broad powers to adjust their procedures in furtherance of their proper objectives. [at 383]
And, as Judge (now Justice) Sullivan points out in his opinion for the Appellate Division in In re Shelton College, 109 N.J. Super. 488 (1970):
It is generally held that the requisites of an administrative fair hearing are satisfied so long as one who participates in the ultimate decision reads and considers all of the evidence presented. * * * [at 492]
While the Administrative Procedure Act, N.J.S.A. 52:14B-1 et seq., was not intended to apply to parole release (or revocation) proceedings conducted in accordance with Title 30, see N.J.S.A. 52:14B-2(a), Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 358 (1973), administrative *534 due process requires that the report of the hearing officer who conducts a final revocation hearing be made available to the parolee and that he be given an opportunity to correct any mistakes that may appear in the report. See Winston v. So. Plainfield Bd. of Ed., 125 N.J. Super. 131, 138 (App. Div. 1973), aff'd 64 N.J. 582 (1974); cf. N.J.S.A. 52:14B-10(c). Here, too, in light of Underwood's admissions of parole violations, the failure to furnish him with a copy of the hearer's report does not constitute reversible error.
While we find that these admissions alone could properly support revocation of Underwood's parole, and that there is no showing that the Board exercised its discretion mistakenly, there is no way of determining what role the written reports from Georgia played in the overall decision of the Board to revoke parole. For this reason we will remand the matter to the Parole Board with direction to provide the appellant with a new final revocation hearing in this State. This should afford Underwood ample opportunity to further contest, if he can, any of the charges of violation of parole. With regard to such hearing, conventional substitutes for live testimony are available. As the court pointed out in Gagnon v. Scarpelli, 411 U.S. 778, 782 n. 5, 93 S.Ct. 1756, 1760 n. 5, 36 L.Ed.2d 656, 662, n. 5 (1973):
* * * While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in Morrissey intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence. Nor did we intend to foreclose the States from holding both the preliminary and the final hearings at the place of violation or from developing other creative solutions to the practical difficulties of the Morrissey requirements.
The final decision of the Parole Board revoking plaintiff's parole is reversed and the matter is remanded to the Board with direction to schedule a new final revocation hearing in accordance with this opinion. We do not retain jurisdiction.
NOTES
[1] We are informed that the Parole Board's present procedures permit the parolee access to the report of the hearing officer and an opportunity to take exceptions thereto.