**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1967-20

NKEMDILUM OKAKPU,

    Plaintiff-Appellant,

v.

IRVINGTON BOARD OF
EDUCATION, DR. DENIESE
COOPER,

    Defendants-Respondents.

_____

        Submitted April 26, 2022 – Decided July 18, 2022

        Before Judges Currier and Smith.

        On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0926-18.

        Christopher C. Roberts, attorney for appellant.

        Hunt, Hamlin & Ridley, attorneys for respondents (Ronald C. Hunt, of counsel and on the brief).

PER CURIAM

Plaintiff Nkemdilum Okakpu held a non-tenured teaching position with defendant, Irvington Board of Education. The Board elected not to renew her contract, and she brought suit, alleging, among other things, violation of her rights under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50. After defendants successfully moved for summary judgment on all counts, she appealed.

We affirm the trial court's dismissal of plaintiff's First Amendment, employer retaliation, and New Jersey Civil Rights Act[1] claims. However, we find plaintiff presented sufficient evidence of employment discrimination to defeat summary judgment on her LAD claim. For this reason, we reverse in part the trial court's order granting defendants summary judgment, and remand.

## I.

From January 2014 to June 2017, plaintiff was employed as a full-time non-tenured elementary school teacher. In January 2017, Dr. Denise Cooper, school principal, emailed plaintiff regarding complaints from parents of children in plaintiff's class. The email detailed plaintiff's repeated late dismissals of her pupils and cited her failure to follow directives.

---

[1] N.J.S.A. 10:6-2(c).

A-1967-20

Subsequently, Dr. Cooper recommended the Board terminate plaintiff's employment. On the non-renewal form, Dr. Cooper listed several reasons, including plaintiff's "continuous discord and conflict with members of the staff," such as "placing the flag of Nigeria on the steps outside her classroom" and "attempt[ing] to engage in inappropriate and unprofessional conversations with the principal . . . ."

The non-renewal form cited other proscribed conduct by plaintiff, including her: solicitation of money from parents for classroom supplies in violation of school policy; inability to "work cohesively" with co-workers; "disrespectful" response to document requests from her employer; excessive tardiness; failure to adhere to protocol and timelines; receipt of warning and reprimand letters; and overall unprofessional attitude.

Plaintiff filed suit in the Law Division, alleging, among other things, that defendants fired her for being Nigerian and placing her country's flag outside of her classroom. She alleged, among other things, that this discharge was an unlawful employment action under the LAD.

Defendants moved for summary judgment, arguing plaintiff's dismissal was based on her poor performance, not her country of origin. After oral argument, the trial court granted summary judgment for defendants as to all

3

counts. The court determined that plaintiff was "attempting to prove unlawful discrimination by circumstantial evidence . . . ." As such, it applied the McDonnell Douglas[2] burden-shifting test.

Initially, the court found that plaintiff met the elements of a prima facie case of discrimination. However, the court found plaintiff could not demonstrate that the legitimate, non-discriminatory reasons for her non-renewal offered by defendant were pretextual. Specifically, the court stated that plaintiff "failed to establish that [the Board's] decision to non-renew her was based on anything other than a bona fide evaluation of her job performance and disciplinary issues."

On appeal, plaintiff makes the following arguments:

POINT ONE

> THE MOTION JUDGE ERRED IN ITS APPLICATION OF THE PRICE WATERHOUSE ANALYSIS IN LIGHT OF THE FACT THAT [THE BOARD] THROUGH ITS DECISION MAKER TERMINATED PLAINTIFF, WHO IS OF NIGERIAN DESCENT, BECAUSE SHE DISPLAYED A NIGERIAN FLAG OUTSIDE HER CLASSROOM.

POINT TWO

> THE MOTION JUDGE ERRED IN FINDING THAT DEFENDANTS DID NOT VIOLATE PLAINTIFF'S

---

[2] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

FIRST AMENDMENT RIGHT IN LIGHT OF THE
FACT THAT [THE BOARD] THROUGH ITS
DECISION MAKER TERMINATED PLAINTIFF,
WHO IS OF NIGERIAN DESCENT, BECAUSE SHE
DISPLAYED A NIGERIAN FLAG OUTSIDE HER
CLASSROOM.

POINT THREE

THE MOTION JUDGE ERRED IN DISMISSING
PLAINTIFF'S COMPLAINT WHEN [THE BOARD]
IS LIABLE FOR RETALIATION UNDER THE
NJLAD WHEN IT TERMINATED PLAINTIFF FOR
ENGAGING IN A PROTECTED RIGHT.

POINT FOUR

THE MOTION JUDGE ERRED IN DISMISSING
PLAINTIFF'S NJCRA CLAIM WHEN DEFENDANT
DEPRIVED PLAINTIFF HER FIRST AMENDMENT
RIGHT BY TERMINATING HER FOR DISPLAYING
A FLAG FROM HER COUNTRY OF ORIGIN.

II.

Because the trial court dismissed plaintiff's claims on summary judgment, "we review that decision de novo and apply the same standard that governs the trial court. Meade v. Twp. of Livingston, 249 N.J. 310, 326-27 (2021) (citing State v. Anderson, 248 N.J. 53, 67 (2021)).

"Summary judgment is appropriate 'if . . . there is no genuine issue as to any material fact challenged and . . . the moving party is entitled to a judgment or order as a matter of law.'" Id. at 327 (quoting R. 4:46–2(c)). In deciding

5

"whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 450, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016). The trial court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

The trial court's function on summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. Meade, 249 N.J. at 327. If "the evidence 'is so one-sided that one party must prevail as a matter of law,'" summary judgment is proper. Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). Summary judgment is not, however, intended to shut out "'a deserving litigant from . . . trial.'" Friedman, 242 N.J. at 472 (quoting Brill, 142 N.J. at 540). See also Meade, 249 N.J. at 327.

## III.

We begin by addressing plaintiff's challenge to the trial court's dismissal of her LAD employment discrimination claim. Plaintiff argues that the court

erred by applying the <u>McDonnell Douglas</u> test to her employment discrimination claim. She contends the <u>Price Waterhouse</u>[3] framework should have been used instead because "listing the flag of Nigeria outside her classroom" on her non-renewal paperwork was "inherently discriminatory on its face" and, therefore, direct evidence of national origin discrimination.

Defendants argue plaintiff failed to prove their conduct was discriminatory toward Nigerians or created an animus towards her protected class. Plaintiff's evidence, according to defendants, was purely circumstantial, and therefore the trial court properly used the <u>McDonnell Douglas</u> analysis.

## A.

Under the LAD, it is unlawful

> [f]or an employer, because of the race, creed, color, <u>national origin</u>, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, pregnancy or breastfeeding, sex, gender identity or expression, [or] disability . . . to refuse to hire or employ or to bar or to discharge . . . from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . . .
>
> [N.J.S.A. 10:5-12(a) (emphasis added).]

---

[3] <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989).

The LAD is intended "to protect the civil rights of individual aggrieved employees as well as the public's strong interest in a discrimination-free workplace." Meade, 249 N.J. at 328 (internal quotation marks and citations omitted). It is remedial legislation that should be construed liberally to advance its purposes. Ibid.

An employee who commences an action seeking redress for an alleged violation of the LAD "may attempt to prove employment discrimination by either direct or circumstantial evidence." Smith, 225 N.J. at 394 (citing Bergen Com. Bank v. Sisler, 157 N.J. 188, 208 (1999)); see also A.D.P. v. ExxonMobil Rsch. & Eng'g Co., 428 N.J. Super. 518, 531 (App. Div. 2012). Determining which analytical framework controls an LAD claim "depends upon whether the employee attempts to prove employment discrimination by . . . direct or circumstantial evidence." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 16 (2017).

Direct proof of discrimination has been described as "rare" and "hard to come by." Smith, 225 N.J. at 396; A.D.P., 428 N.J. Super. at 531. The "key difference" between a direct evidence case and a circumstantial evidence case "is the kind of proof the employee produces on the issue of bias." Smith, 225 N.J. at 396 (internal quotations and citations omitted).

Direct evidence is the kind of evidence that, without inference or presumption, definitively shows the employer's animus towards the protected class and its reliance on such when making the adverse employment decision. Sisler, 157 N.J. at 208. See also Smith, 225 N.J. at 394 (citation omitted) (direct evidence "if true, must demonstrate not only a hostility toward members of the employee's class, but also a direct causal connection between that hostility and the challenged employment decision.").

Direct evidence "may include evidence 'of conduct or statements by persons involved in the [decision making] process that may be viewed as directly reflecting the alleged discriminatory attitude.'" Smith, 225 N.J. at 394 (quoting Fleming v. Corr. Healthcare Sols., Inc., 164 N.J. 90, 101 (2000)). See also, Grande, 230 N.J. at 16 (proving discriminatory discharge by direct evidence requires plaintiff to produce evidence that employer substantially relied on a proscribed discriminatory factor in making its decision). A plaintiff has presented direct evidence of discrimination if the court determines that a statement made by a decisionmaker associated with the [decision making] process actually bore on the employment decision at issue and communicated [the] proscribed animus." Id. at 394-95 (internal quotation marks and citations omitted).

A-1967-20

By contrast, circumstantial evidence typically includes statements such as "statements by non-decisionmakers, statements by decisionmakers unrelated to the contested employment decision, and other stray remarks[.]" McDevitt v. Bill Good Builders, Inc., 175 N.J. 519, 527 (2003) (quoting Fakete v. Aetna, Inc., 308 F.3d 335, 337 n.2 (3d Cir. 2002)). But statements or even head nods made by those with decision making authority in tandem with the adverse employment action can be considered direct. See A.D.P., 428 N.J. Super. at 534 ("a scrap of paper saying, 'Fire Rollins—she is too old' was an example of direct evidence."); see also McDevitt, 175 N.J. at 523 (decision maker's head nod while his secretary informed plaintiff he was fired for being "too old" was direct evidence).

If the employee's claim is based on circumstantial evidence of discrimination, New Jersey courts apply the analytical framework established in McDonnell Douglas. See Victor v. State, 203 N.J. 383, 408 (2010). The McDonnell Douglas burden-shifting framework "suppl[ies] a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination." Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, ___ U.S. ___, 140 S. Ct. 1009, 1019 (2020).

10

But in the rare case "where there is direct evidence of discrimination, the McDonnell-Douglas analysis does not apply." Smith, 225 N.J. at 396. Instead, the Price Waterhouse, or mixed motive, framework is utilized. Under the mixed motive analytical structure, once direct evidence of discrimination has been shown, the burden automatically shifts to defendant to show that it would have made the same decision regardless of the alleged bias. Id. at 395 (once a plaintiff shows that an employer had a discriminatory animus, through direct evidence of discrimination, the employer has only an affirmative defense on the question of but for cause or cause in fact).

## B.

We disagree with plaintiff's argument that the trial court erred in analyzing her claim under the McDonnell Douglas framework. However, we are satisfied that the evidence of discrimination alleged here, namely the inclusion of "hanging the flag of Nigeria outside her classroom" raised issues of fact as to whether plaintiff's national origin was considered by decision makers when making the adverse employment decision. While the legitimate, non-discriminatory reasons provided by defendants were plentiful, we must consider the evidentiary materials in the light most favorable to the non-moving party. Brill, 142 N.J. at 540. Doing so leads us to conclude that a rational factfinder

11

could find these reasons to be pretext and resolve the dispute in favor of plaintiff. See Ibid.

Our function in this de novo review "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Meade, 249 N.J. at 327. This pivotal issue is appropriately left to the jury on remand.

## IV.

As to plaintiff's remaining arguments, she asserts that the trial court erred in dismissing her wrongful termination, retaliation, and New Jersey Civil Rights Act claims. We disagree on each of these points and affirm in part for the reasons that follow.

## A.

In New Jersey, an employee has a cause of action for wrongful discharge when the discharge is "contrary to a clear mandate of public policy." Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 72 (1980). "[C]onduct that is directed against constitutionally-protected activity may violate a clear mandate of public policy, even though it may not offend any other statutory or legal standard." MacDougall v. Weichert, 144 N.J. 380, 399 (1996). Additionally, "it is a well-settled restraint upon the public employer's right to terminate an employee . . .

A-1967-20

that such termination cannot be solely predicated upon the exercise of a constitutional right, particularly the First Amendment right of freedom of speech." Grexa v. State, Dept. of Hum. Servs., 168 N.J. Super. 202, 209-10 (App. Div. 1978) (citations omitted).

However, a "bare assertion or generalized allegation of infringement of a constitutional right" does not create a claim of constitutional dimension. Id. at 209 (quoting Winston v. S. Plainfield Bd. of Ed., 125 N.J. Super. 131, 144 (App. Div. 1973)). Therefore, in order to prove retaliation for engaging in a constitutional right, a plaintiff must show that his or her constitutionally protected activities were a significant element of the employer's decision to discharge or not renew. Ibid.

Similarly, the LAD protects employees from employer retaliation in certain circumstances. See Craig v. Suburban Cablevision, Inc., 140 N.J. 623, 629-30; Victor, 203 N.J. at 409. N.J.S.A. 10:5-12(d) makes it unlawful for employers to engage in:

> reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the

exercise or enjoyment of, any right granted or protected by this act.

[N.J.S.A. 10:5-12(d) (emphasis added).]

"[T]he prima facie elements of a retaliation claim under the LAD requires plaintiff to demonstrate that: (1) plaintiff was in a protected class; (2) plaintiff engaged in protected activity known to the employer; (3) plaintiff was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence." Victor, 203 N.J. at 409.

Moreover, the New Jersey Civil Rights Act provides, in relevant part:

[a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, may bring a civil action for damages and for injunctive or other appropriate relief.

[N.J.S.A. 10:6-2(c).]

The first task in asserting a substantive due process claim "is to identify the state actor . . . that has caused the alleged deprivation" and the second task "is to identify a right, privilege or immunity secured to the claimant . . . ." Filgueiras v. Newark Pub. Schs., 426 N.J. Super. 449, 468 (App. Div. 2012).

14

Applied to the employment context, "[a]n employee hired at will has no protected interest in his employment and may not prevail on a claim that his or her discharge constituted a violation of property rights." Id. at 469-70. See also Nicholas v. Pa. State Univ., 227 F.3d 133, 142 (3d Cir. 2020) (concluding that even tenured public employment is not a fundamental property interest entitled to substantive due process protection).

B.

We address each claim in turn. At the outset, plaintiff has not established that defendants discharged her solely for exercising a First Amendment right. See Grexa, 169 N.J. Super. at 209-10. Indeed, "placing the flag of Nigeria" was on her non-renewal form, but that was one of many reasons defendants relied on when deciding to discontinue her employment. For example, the form also referenced parent complaints, disciplinary issues, and her inability to work well with her colleagues, among others. In light of this, we find the trial court did not err in dismissing plaintiff's wrongful discharge claim on summary judgment.

Plaintiff's employer retaliation claim under the LAD also fails. Her argument is flawed because it misconstrues the activities protected by the LAD's retaliation provision. The protected activities designated in N.J.S.A. 10:5-12(d) are: (1) opposing discriminatory practices, (2) filing a complaint, testifying, or

15

assisting with a proceeding regarding discrimination, or (3) aiding or encouraging another to exercise their LAD rights. The LAD's safeguard against retaliation does not extend to protected rights outside this mandate, such as freedom of speech. Accordingly, the motion judge properly dismissed plaintiff's incognizable LAD retaliation claim.

Finally, plaintiff's employment with defendants was not guaranteed. Her employment contract gave defendants the discretion to terminate plaintiff at any time by giving sixty calendar days' notice. As an at-will employee, plaintiff had no protected property interest in her position. See Filgueiras, 426 N.J. at 469-70. As such, she cannot prevail on an NJCRA substantive due process claim and summary judgment was properly granted in favor of defendants.

Affirmed in part; vacated and remanded in part for further proceedings consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1967-20