No. 227

HENRY A. DREER, INC., A CORPORATION OF NEW JERSEY, PROSECUTOR, v. UNEMPLOYMENT COMPENSATION COMMISSION OF NEW JERSEY, BOARD OF REVIEW OF THE SAME; AND FRANK J. HOLZMAN, DEFENDANTS.

No. 228

HENRY A. DREER, INC., A CORPORATION OF NEW JERSEY, PROSECUTOR, v. UNEMPLOYMENT COMPENSATION COMMISSION OF NEW JERSEY, BOARD OF REVIEW OF THE SAME; AND HENRY C. SMITH, DEFENDANTS.

No. 229

HENRY A. DREER, INC., A CORPORATION OF NEW JERSEY, PROSECUTOR, v. UNEMPLOYMENT COMPENSATION COMMISSION OF NEW JERSEY, BOARD OF REVIEW OF THE SAME; AND ARTHUR E. SUTPHEN, DEFENDANTS.

Argued May 7, 1941—Decided September 9, 1941.

Before Justices PARKER, DONGES and COLIE.

For the prosecutor, *Mario H. Volpe* (*Joseph D. Kaplan*, of counsel).

For the defendant Unemployment Commission, *Herman D. Ringle.*

For the defendant Board of Review, *Clarence F. McGovern.*

The opinion of the court was delivered by

PARKER, J. These three cases arise under the "Unemployment Compensation Act," chapter 270 of the laws of 1936, *Pamph. L., pp.* 1045, *et seq.,* carried into *R. S.* 1937 as chapter 21 of title 43. The individual defendants in *certiorari,* Holzman, Smith and Sutphen, were employees of the corporate prosecutor Henry A. Dreer, Inc., which (to quote the brief submitted by its counsel) "was and is the owner and operator of a large tract of land at Riverton, New Jersey, run as a farm and incidentally to sell plants and bulbs." All three individual defendants were "unemployed" at the time of applying for compensation under the act, but the employer prosecutor claimed that they were subject to the exception which appears at page 1085 of *Pamph. L.* 1936, *R. S.* 43:21-19 (i) (7) (A) and which reads: "(7) The term 'employment' shall not include (A) agricultural labor." And the basic question that we are asked to decide is whether the tasks in which they were respectively engaged when employed, constituted "agricultural labor" in the true intent and meaning of the statute. The prosecutor employer claimed that they did, and defended before the several statutory judicial agencies on that ground. These agencies, as pointed out in *Provident Mutual, &c., Co.* v. *Unemployment Commission,* 126 *N. J. L.* 348 (at *p.* 352), are (1) a "deputy" who makes an initial determination: (2) an "appellate tribunal," and finally, on a further appeal, a "board of review." *R. S.* 43:21-6, paragraphs b-f. The proceedings that were had before these agencies are not fully

laid before us, but we gather that the deputy rejected the claims, that the "appellate tribunal" reversed the decision of the deputy and allowed the claims; and that the Board of Review, by a vote of two to one, affirmed the decision of the appellate tribunal. The writs herein are directed to the Commission itself; to the Board of Review as a body; and to the individual members thereof; and to the respective claimants. The practice of directing the writ to parties other than the custodian of the record is irregular, the proper practice being to name them only on the endorsement, *Zeller* v. *Guttenberg,* 81 *N. J. L.* 305; 83 *Atl. Rep.* 466; but this is no obstacle to a determination of the merits. The case was orally argued, and briefs are submitted for the employer-prosecutor, for the Board of Review, and for the Unemployment Compensation Commission, which, siding with the prosecutor, takes the position that the judgment of the Board of Review should be set aside.

A preliminary question arises with regard to the jurisdiction in the premises, if any, of the Unemployment Commission. That body is in substance a prosecutor in this case, though it makes a return to the writ. By that return it appears that in March, 1939, considerably over a year before these cases were adjudicated by the deputy and the reviewing bodies, the Commission sent to the Dreer concern (and conceivably to others in similar business) a "Ruling Letter" stating in substance that all the employees in that business were engaged in "agricultural labor" and specifying the work done by the three claimants in general terms. The "appellate tribunal" and "board of review" ignored that letter and held to the contrary. It is now argued that the "ruling letter" should have been regarded by them as compelling authority. But we do not think so. The statute is lengthy and complicated; but our study of it leads to the conclusion that the Commission is an administrative and not a judicial body; that it is authorized and required by the act to establish its own courts; but not empowered to control them in their decisions, any more than an executive who appoints a judge may control that judge's decisions. So we see nothing in the point that the ruling letter is controlling.

This brings us to the construction and interpretation of the statute. The language under consideration, and above quoted, is in essence a proviso. Being contradictory to the purview, it is controlling. *Gerstung* v. *Sauer,* 82 *N. J. L.* 68; *Pierson* v. *Cady,* 84 *Id.* 54. All the parties herein seem to admit that the question is, what did the legislature mean by "agricultural labor?" It is argued that the phrase is narrower than "farm labor," and *contra,* that it is broader. But we have no doubt at all that the business of the employer in this case was and is agricultural, including the sowing of seed, tilling of ground, clearing of weeds, fertilizing, gathering the product, and marketing it, which last, in this case, consisted mainly in packing and shipping. There were greenhouses, which had to be heated in winter and shaded in summer; crates and boxes had to be made. Now it is quite conceivable that if the business were so minute as to require the services of only one man as an employee, the same man might have sown, tilled, weeded, manured, reaped, packed and shipped, and perhaps even kept the accounts. With a large concern like Dreer's, there is of course a division of labor; but the business is agricultural throughout. It happens to be rather highly organized, but the essence remains. As regards the three employees who are parties herein, Holzman did mostly packing and addressing, but was available for field work and did it part of the time. Smith and Sutphen were greenhouse men. Smith seems to have had the general management of, and responsibility for, the greenhouses, and particularly to see that an even temperature was maintained. Sutphen's work was substantially the same. This we think is "agricultural labor," as much so as fertilizing and watering the plants. The fact that the same kind of work is done in warming buildings other than greenhouses is not material, as the test, in our judgment, is the nature and object of the business.

The statute being remedial, should of course be liberally construed as to its purview. But the controlling proviso excluding "agricultural labor" is broad and sweeping, and should not be whittled down by narrowness of construction.

So far, only the language particularly applicable to the

case in hand has been quoted; but the whole proviso may well be considered. There are seven paragraphs, lettered from (A) to (G), and in each, except perhaps in (B), the emphasis is laid on the characterization of the employer, and not on the service performed. (B) reads: "domestic service in a private home;" not, for example, in a hotel or boarding house; (C) "service" (any service) performed as a member of the crew of a vessel, &c.; (D) service in the employ of certain near relatives; (E) service in the employ of the state or a political subdivision; (F) service under the government of the United States; and (G) service under certain classes of charitable corporations. We have not undertaken to reproduce here the language of the act *verbatim.* Viewing these seven as a group, it would seem, as we have just said, that emphasis is laid on the character, relationship, and business of the employer, rather than on the kind of work done by the employee. For example, under paragraph (E), an employee of the state, whether a gardener tending the flowers in the State House grounds, or a woman stenographer in a state office, would not reap the benefits of the act. As regards paragraph (A), however, the intent seems to be twofold; first, that whoever and whatever the employer, an agricultural laborer is not entitled, so that the gardener of a private individual would not be entitled, and the gardener in the State House grounds doubly disentitled; and secondly, that where the business of the employer is agricultural, as in this case, and the work of the employee is germane and incidental to that business, the proviso is applicable and the employee disentitled. This view seems to be adequately supported by such cases in other jurisdictions as *Keeney* v. *Beasman,* 169 *Md.* 582; 182 *Atl. Rep.* 566; *American, &c., Corp.* v. *Tone,* 127 *Conn.* 132; 15 *Atl. Rep.* (2d) 80; *Miller* v. *Ind. Acc. Comm.,* 179 *Cal.* 764; 178 *Pac. Rep.* 960, and *Davis* v. *Industrial Com.,* 59 *Utah* 607; 206 *Pac. Rep.* 267.

We conclude, therefore, that the prosecutor in the three cases before us is not liable for compensation to the three named employees; and that the decision of the Board of Review, affirming that of the Appeal Tribunal, is set aside, and the decision of the deputy in each affirmed, without costs.