UNEMPLOYED–EMPLOYED COUNCIL OF NEW JERSEY, INC., APPELLANT, v. JOHN J. HORN, COMMISSIONER, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, RESPONDENT.

Argued September 24, 1980—Decided April 22, 1981.

*Regina C. Little* argued the cause for appellant.

*Michael S. Bokar*, Deputy Attorney General argued the cause for respondent (*John J. Degnan*, Attorney General of New Jersey, attorney; *Stephen Skillman*, Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

HANDLER, J.

The Office of Administrative Law, created pursuant to *L.* 1978, *c.* 67, *N.J.S.A.* 52:14F–1 *et seq.*, is given general jurisdiction to conduct the hearings in contested cases for all state agencies through independent administrative law judges. A few state agencies and certain kinds of contested matters, however, are excluded by express statutory provision from the coverage of the Office of Administrative Law. This appeal addresses the question of whether the hearing of contested claims for unemployment compensation, as presently conducted by the appeal tribunals and board of review in the Division of Unemployment and Temporary Disability in the Department of Labor and Industry, comes within the statutory exemption.

I

The issues in this appeal originated with an inquiry from Legal Services of New Jersey, on behalf of appellant Unemployed-Employed Council of New Jersey to the Commissioner of the Department of Labor and Industry. The Commissioner took the position that the appeal tribunals and board of review, which adjudicate contested unemployment compensation claims in the Division of Unemployment and Temporary Disability Insurance (formerly the Division of Employment Security, referred to herein simply as "Division") under the unemployment compensation law, *N.J.S.A.* 43:21–1 *et seq.*, are excluded from the jurisdiction of the Office of Administrative Law (OAL) by the terms of *N.J.S.A.* 52:14F–8(b). A similar inquiry was directed to the Director of the Office of Administrative Law and Chief Admin-

istrative Law Judge, who acquiesced in the result reached by the Commissioner on the alternate ground that the Commissioner had the authority to determine under *N.J.S.A.* 52:14F–7(a) that such cases were not to be considered "contested" and for that reason did not come under the jurisdiction of the OAL.[1] Pursuant to *N.J.S.A.* 52:14B–8 appellant then formerly requested a declaratory ruling from the Commissioner, who complied by confirming his prior position, supported by an accompanying legal memorandum from the Attorney General. Appellant appealed this ruling to the Appellate Division and the case was directly certified by the Court pursuant to *R.* 2:12–1. For the reasons herein presented, we now affirm the position of the Commissioner and Attorney General.

## II

The Office of Administrative Law (OAL) was established by *L.*1978, *c.* 67, *N.J.S.A.* 52:14F–1 *et seq.*, to be effective on January 6, 1979. This new governmental body constitutes the culmination of years of effort to achieve fundamental reforms affecting the administrative agencies of state government. The signal improvement encompassed by the new program is the establishment of a corps of independent hearing officers, referred to as "administrative law judges," directly responsible to the Director of the Office of Administrative Law. *N.J.S.A.* 52:14F–3, 4, 5. The Office of Administrative Law itself is not functionally a part of any other state administrative agency. *N.J.S.A.* 52:14F–1. Its Director, who is also the Chief Adminis-

---

[1] *N.J.S.A.* 52:14F–7(a) provides as follows:

Nothing in this amendatory and supplementary act shall be construed to deprive the head of any agency of the authority pursuant to section 10 of P.L.1968, c. 410 (C. 52:14B–10) to determine whether a case is contested or to adopt, reject or modify the findings of fact and conclusions of law of any administrative law judge.

As noted, the Commissioner's position rested upon *N.J.S.A.* 52:14F–8(b). Since *N.J.S.A.* 52:14F–7(a) is not relied upon in the appeal by the Commissioner, it need not be addressed in light of our disposition.

trative Law Judge, is appointed by the Governor with the advice and consent of the Senate. *N.J.S.A.* 52:14F–3. The foremost responsibility of the administrative law judges under the new law is to conduct the hearings in contested cases that arise in the various administrative agencies of the State. *N.J.S.A.* 52:14F–5.

The major purpose of this legislation is to bring impartiality and objectivity to agency hearings and ultimately to achieve higher levels of fairness in administrative adjudications. Committee Statement to Senate No. 766–L.1978, *c.* 67 ("Committee Statement"). While the law establishing the OAL deals with other important aspects of administrative practice and procedure, such as the promulgation and publication of agency rules and regulations (*N.J.S.A.* 52:14B–7, *N.J.S.A.* 52:14F–5(e), (f)), the salient reform of the law is directed most particularly to the hearing function of agencies engaged in quasi-judicial proceedings.

The act recognizes that in the administrative adjudication of contested cases, the hearing, as distinguished from the ultimate decision, is usually handled separately from the decision itself. Typically, such hearings were delegated to agency employees acting as hearing examiners. In the Administrative Procedure Act, to which the enactment creating the OAL was a supplement and amendment, these examiners were referred to as "presiding officers," *N.J.S.A.* 52:14B–10(a), and were usually employees of the agency with diverse duties in addition to their hearing responsibilities. They were often used only part-time in the hearing of cases and were generally subordinate and accountable to the decisional head of the agency with respect to the performance of their duties. It was widely perceived that this format for administrative agency adjudication greatly diminished the impartiality and objectivity of agency decisions. The use of such employees as hearing officers fostered an institutional bias or propensity in favor of the agency with respect to factfinding and recommended decisions that was felt to be unfair to the parties whose rights were being adjudicated.

Committee Statement, *supra*; see *City of Hackensack v. Winner*, 82 *N.J.* 1, 36–37 (1980). The OAL legislation was a response to this concern.

In this case, it is conceded that the hearing of contested unemployment compensation cases arising within the Division of Unemployment and Temporary Disability Insurance would fall within the ambit of the statute and would be required to be conducted by an administrative law judge under the jurisdiction of the OAL,[2] unless otherwise excluded. The Commissioner and Attorney General claim that such a statutory exclusion is applicable.

The exclusionary provision is *N.J.S.A.* 52:14F–8 which states:

Unless a specific request is made by the agency, no administrative law judge shall be assigned by the director to hear contested cases with respect to:

a. The State Board of Parole, the Public Employment Relations Commission, the Division of Workers' Compensation, the Division of Tax Appeals, or to any agency not within section 2(a) of P.L.1968, c. 410 (C. 52:14B–2(a)); [3] .

---

[2]The statute in pertinent part applies to the adjudication of "contested cases" by "any State agency." *N.J.S.A.* 52:14F–5(n). "State agency" or "agency" is defined by the statute to include "each of the principal departments in the executive branch of the State Government, and all boards, divisions, commissions, agencies, departments, councils, authorities, offices or officers within any such department ..." *N.J.S.A.* 52:14B–2(a). A "contested case" is one "in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing." *N.J.S.A.* 52:14B–2(b). Thus, disputed unemployment compensation claims heard by the appeal tribunals and board of review in the Division are clearly covered by these statutory definitions. Slight changes in these definitions through amendment, *L.*1981, *c.* 27, are not relevant in this appeal.

[3]The Division of Tax Appeals in the State Department of the Treasury, which was excluded from the jurisdiction of the OAL, has now been supplanted by the New Jersey Tax Court, a statutory court of limited jurisdiction under the Constitution (*N.J.Const.* (1947), Art. 6, § 1, par. 1), functioning in the judicial branch of government under the authority of the Supreme Court, *L.*1979, *c.* 114; *N.J.S.A.* 54:2–33. *N.J.S.A.* 52:14F–8(a) has been amended to reflect this development. *L.*1980, *c.* 166.

b. Any matter where the head of the agency, a commissioner or several commissioners, are required to conduct or determine to conduct the hearing directly and individually.

The Commissioner contends that the contested cases conducted by the appeal tribunals and the board of review come within the exclusion of subsection b. It is asserted that each of these levels of review constitutes a separate agency and that the members of each of these agencies are decisional officers, thereby qualifying as "[t]he head of the agency." [4] Moreover, it is said, the decisional officers of these respective agencies are empowered by the statute governing unemployment compensation cases to hear contested claims "directly and individually." Therefore, it is urged, the hearing of contested employment compensation cases in these agencies is excluded by the language of *N.J.S.A.* 52:14F–8(b) and is not subject to transfer or assignment to administrative law judges.[5]

In addressing this argument, we must first examine the statute establishing the structure and responsibility of the appeal tribunals and board of review in the Division of Unemployment and Temporary Disability Insurance. The unemployment compensation law was enacted originally in 1936 (*L.*1936, *c.* 270) in conjunction with the federal Social Security Act, 42 *U.S.C.A.* § 301 *et seq.* A fundamental requirement of the federal law is that unemployment compensation matters be adjudicated by an

---

[4] The statutory definition of "head of the agency" is "the highest authority within any agency authorized or required by law to render an adjudication in a contested case." *N.J.S.A.* 52:14B–2(d). An "adjudication" includes a "final determination, decision or order made or rendered in any contested case." *N.J.S.A.* 52:14B–2(c).

[5] The appellant also contends that the failure on the part of the Legislature to designate the Division of Unemployment Compensation and Temporary Disability as an excluded agency under subsection a of *N.J.S.A.* 52:14F–8 is evidence of an intent that it be subject to the Office of Administrative Law. This interpretation, however, would effectively render the exclusion of subsection b meaningless. For the reasons that are developed in this opinion, clearly this was not the legislative intent and appellant's argument in this respect must be rejected.

"impartial tribunal." 42 *U.S.C.A.* § 503(a)(3). The State law was drafted to comply with this indispensable condition.

Unemployment compensation matters are administered by the Division within the Department of Labor and Industry. *N.J. S.A.* 43:21–6(a). At the lowest administrative level, a claim for unemployment compensation benefits is referred to a "representative designated by the director," called a "deputy," who is authorized to render an initial determination. *N.J.S.A.* 43:21–6(b)(1). The determination of the deputy granting or disapproving claims becomes final unless an appeal is taken. *Id.* Such an appeal may be taken to an intermediate appellate body. *N.J. S.A.* 43:21–6(c).

This level is constituted by "one or more impartial appeal tribunals consisting in each case of either a salaried examiner or a body, consisting of examiners under the supervision of a Chief Appeals Examiner all of whom shall be appointed [by the Director of the Division, with the approval of the Commissioner] pursuant to the provisions of Title 11 of the Revised Statutes, Civil Service and other applicable statutes." *N.J.S.A.* 43:21–6(d). These appeal tribunals are vested with the statutory power to "... hear and decide disputed benefit claims ...." *Id.* The decision of the appeal tribunal is deemed to be final unless an appeal is taken to the board of review. *N.J.S.A.* 43:21–6(c).

The board of review consists of three persons appointed by the director "whose duties shall be to act as a final appeals board in cases of benefit disputes ... and to ... [supervise] the work of local appeal tribunals ...." *N.J.S.A.* 34:1A–19; *N.J.S.A.* 43:21–10(d). The board of review must "permit such further appeal by any of the parties interested in a decision of an appeal tribunal which is not unanimous and from any determination which had been overruled or modified by any appeal tribunal," and, on its own motion, it can "affirm, modify, or set aside any decision of an appeal tribunal on the basis of the evidence previously submitted in such case, or direct the taking of addi-

tional evidence, or may permit any of the parties to such decision to initiate further appeals before it." *N.J.S.A.* 43:21–6(e). Any party to the proceedings, including the Division, may obtain judicial review of the board's final decision and the board of review is deemed to be a party to any such judicial action. *N.J.S.A.* 43:21–6(h).

In view of this statutory scheme, we entertain no hesitation in ruling that the conduct of hearings in contested claims by the board of review is exempt under subsection b of *N.J.S.A.* 52:14F–8. This agency by statute enjoys complete powers of adjudication. In addition to full decisional responsibility, it is authorized to conduct hearings "directly and individually" by its appointed members and its hearings are in fact so conducted. Moreover, it is the final appellate tribunal in the administrative hierarchy in the Division. *N.J.S.A.* 43:21–10(d). Therefore, it is clearly to be regarded as the "head of the agency" within the terms and intendment of the exclusionary provision of *N.J.S.A.* 52:14F–8(b).

A similar conclusion is not as readily reached with respect to the appeal tribunal, which is the intermediate administrative appellate body in the Division. At first glance, it might appear that the phrase "head of an agency" would not cover such an entity as the appeal tribunal. The Legislature, however, in employing this phraseology in the exemption provision apparently assumed that the overwhelming majority of state quasi-judicial administrative agencies are single-unit bodies functioning essentially on one level.

The appeal tribunal, by way of contrast, functions at an intermediate level, adjudicating cases which have been determined at a lower administrative level and which may be appealed to a higher level. The question is whether the exemption of *N.J.S.A.* 52:14F–8(b) was intended to cover agency adjudications at an intermediate tier in such an administrative structure.

The intended effect of the statutory exclusion in this situation is not self-revealing. In searching for the true understanding

and proper application of a statute, its internal sense should control the meaning to be ascribed to its literal terms; the statutory language must be read perceptively and sensibly with a view toward fulfilling the legislative intent. See, *e. g., Suter v. San Antonio Foundry and Machine Co.*, 81 *N.J.* 150, 160 (1979); *N.J. Builders, Owners & Managers Ass'n v. Blair*, 60 *N.J.* 330, 338–339 (1972); *Schierstead v. Brigantine*, 29 *N.J.* 220, 230–231 (1959); *Wollen v. Fort Lee*, 27 *N.J.* 408, 418 (1958); *Alexander v. N.J. Power & Light Co.*, 21 *N.J.* 373, 378–379 (1956).

The statute, as we have mentioned, deals primarily with aspects of institutional bias in the adjudications of quasi-judicial administrative agencies. Such bias or partiality has been perceived to be most pronounced where the adjudicatory function is procedurally bifurcated as between its hearing and decisional phases and the former is undertaken by subordinate agency employees. The legislation concentrates upon this dimension of administrative agency adjudication.

The bifurcation of hearing and decisional responsibilities is long-standing and commonplace in administrative adjudicatory proceedings. See *Mazza v. Cavicchia*, 15 *N.J.* 498 (1954). Indeed, from many vantages the delegation of hearings and their separation from the decisional function in agency adjudications is regarded as a necessary expedient in the effectuation of governmental business through its administrative machinery. Justice Sullivan, then sitting in the Appellate Division, observed in *In re Shelton College*, 109 *N.J.Super.* 488, 492 (1970), that this separation of hearing from decision was necessary "if administrative agencies are to be permitted to function effectively" and such separation is proper as long as procedures are "fair." *Accord, Fifth St. Pier Corp. v. City of Hoboken*, 22 *N.J.* 326, 332 (1956); *In re North Jersey Dist. Water Supply Comm.*, 175 *N.J.Super.* 167, 190–193 (App.Div.1980). Hence, in the typical situation, where subordinate agency employees conduct the hearing of cases, the purpose of the statute is to overcome the sensed agency favoritism of such employees, a partiality that

could easily creep into the hearing itself and ultimately permeate the final decision made by the agency head or officer based not only upon the record of the hearing, but also upon the proposed findings and recommendations of the hearing officer. The act frontally addresses this particular evil by requiring agency hearings in such situations to be conducted by administrative law judges, who are statutorily independent of the agency and therefore free of any agency predisposition or bias. See, *Public Hearings before Senate State Government, Federal and Interstate Relations and Veterans Affairs Committee on Senate No. 766* (March 20, 1978) at p. 17 ("Public Hearings").

In enacting this legislation, the Legislature was also well aware of the converse situation, that is, a contested case where the hearing function is not truncated from its decisional phase and the agency decisional officer conducts the hearing directly. Clearly the Legislature perceived no need to remedy or alter this mode of agency adjudication. In point of fact, by its statutory exclusionary provision, it undertook to preserve such adjudications.

While governmental and public convenience may be advanced by allowing hearings to be conducted separately from decisions in administrative adjudications, there is certainly no *a priori* compulsion borne of due process, fundamental fairness, or statutory command that mandates such a separation. Indeed, as recognized by the dissent, in cases involving complete adjudications directly undertaken by decisional officers, "the Legislature believed that such high-level agency personnel could be expected to provide a fair and procedurally correct hearing and would, in addition, bring their expertise in the area of regulation to bear on the case." *Post* at 666. Thus, it has been observed that under some circumstances it may be preferable and desirable for decision-makers themselves to hear the evidence. *City of Asbury Park v. Dept. of Civil Service,* 17 *N.J.* 419 (1955); *McAlpine v. Garfield,* 135 *N.J.L.* 497, 501 (E. & A. 1947); *Orange v. DeStefano,* 48 *N.J.Super.* 407, 413 (App.Div.1958); *cf. Morgan v. United States,* 298 *U.S.* 468, 481, 56 *S.Ct.* 906, 911–912, 80 *L.Ed.*

1288, 1295 (1936) (one who decides the case must evaluate the evidence); *Horsman Dolls, Inc. v. Unemployment Comm.*, 134 *N.J.L.* 77, 80–81 (E. & A. 1946), app. dism., 329 *U.S.* 693, 67 *S.Ct.* 635, 91 *L.Ed.* 606 (1947) (impermissible to delegate decisional function); see also Public Hearings, *supra* at 5, 13. In such situations, however, it has been recognized that other problems occasioned by the merger and concentration of major agency functions, *i. e.*, investigation, prosecution and adjudication, can impact upon the fairness of adjudications. These particular concerns have led to the development of various procedures to assure minimally acceptable levels of administrative fairness. *E. g., Elizabeth Federal S. & L. Assn. v. Howell*, 24 *N.J.* 488 (1957); *In re Plainfield-Union Water Co.*, 11 *N.J.* 382 (1953); *Mazza v. Cavicchia, supra*, 15 *N.J.* at 514–526; *Winston v. Bd. of Ed. of S. Plainfield*, 125 *N.J.Super.* 131, 137–140 (App.Div.1973), aff'd, 64 *N.J.* 582, 586 (1974); *In re Shelton College, supra*, 109 *N.J.Super.* at 492–493.

The statutory exclusion which the Legislature provided under *N.J.S.A.* 52:14F–8(b) is meant to be applicable specifically to those agency adjudications where the hearing and decisional functions have not been sundered. The exclusion, in effect, enables administrative decisional officers to conduct hearings in contested cases. The reasons for this are fully understandable. As noted, sometimes it is important that such hearings be undertaken by the decisional officer of the agency. Further, the hearing of certain contested cases directly by the chief decisional officer, without delegation to subordinate agency personnel, may well promote integrity, cohesiveness and expertise in the administrative decisional process and, generally, enhance the effectiveness of agency regulatory jurisdiction. Although procedurally distinct from other agency functions, the administrative adjudication of contested cases is not undertaken in a regulatory vacuum. Rather, it is an integral part of administrative regulation, and is properly to be placed within this larger framework of agency jurisdiction. *Cf. City of Hackensack v. Winner, supra*, 82 *N.J.* at 30; *Bally Manufacturing Corp. v. New*

*Jersey Casino Control Commission*, 85 *N.J.* 325, 331 (1981) (concurring opinion). Thus, by the statutory exclusion of such cases, the Legislature ensured the preservation of such objectives as administrative agency autonomy, responsibility, effectiveness and expertise, all of which may be served when the decisional officer of an agency directly and personally conducts the hearing of particular contested cases.

We must then address the basic issue raised here against this background and frame of reference. That issue is whether the appeal tribunal, as an intermediate appellate body—one where adjudications by decisional officers combine both the hearing and decisional functions—can be considered the "head of the agency" in terms of the exclusion of *N.J.S.A.* 52:14F–8(b). We see no statutory barrier to the conclusion that the appeal tribunal comes within this exclusion.

It has been recognized that the appeal tribunal, as well as the board of review, by statute possesses distinct delegated administrative authority and exercises full decisional or adjudicatory powers at its particular level. *Johannesen v. N. J. Dept. of Labor, Div. of Empl. Sec.*, 73 *N.J.Super.* 507, 510 (App.Div.1962); see also *Krauss v. A. & M. Karagheusian*, 13 *N.J.* 447, 457 (1953); *Higgins v. Bd. of Review*, 33 *N.J.Super.* 535, 538 (App.Div.1955). Our courts, upon occasion, albeit in different contexts, have acknowledged that this complete statutory framework for the administrative processing of disputed unemployment compensation claims establishes a sharply defined administrative hierarchy with distinct and separate agencies on each of its levels. *E. g., Higgins v. Bd. of Review, supra*, 33 *N.J.Super.* at 538; *Wekearnyan Federal Credit Union v. Zuna*, 130 *N.J.L.* 69 (Sup. Ct.1943); *Henry A. Dreer, Inc. v. Unemployment Comp. Comm.*, 127 *N.J.L.* 149, 150 (Sup.Ct.1941). *Cf. International Tel. & Tel. Corp. v. Local 134*, 419 *U.S.* 428, 443, 95 *S.Ct.* 600, 609–610, 42 *L.Ed.*2d 558, 570–571 (1975) (determination of an intermediate tribunal may be considered final agency action at *that* level for purposes of statute). Hence, the fear voiced by the dissent that any low-level employee of a subordinate branch or division of an

agency who hears cases can qualify as an "agency head" by the simple expedient of "deciding" such cases—thereby avoiding the application of the OAL—is unwarranted. *Post* at 666. We determine in this case only that an intermediate appellate body that has *statutory* decisional authority and the essential *statutory* characteristics of the appeal tribunals can reasonably be considered as an agency within the terms and intendment of the statutory exemptions of 8(b).[6]

It is worth noting, in this vein, that the Administrative Procedure Act, *N.J.S.A.* 52:14B-1 *et seq.*, very pointedly preserves the status and adjudicatory functions of intermediate administrative tribunals. *N.J.S.A.* 52:14B-12. Clearly the Legislature sought to avoid eviscerating genuine agency adjudication, even within a multi-level agency structure, where a decisional officer is statutorily authorized to conduct hearings. Moreover, as pointed out by the Attorney General, there are very few administrative structures with intermediate adjudicatory tribunals similar to the Division in this case. Consequently, the result reached in this case does not, in the words of the dissent, "threaten to undermine the OAL in its infancy," *post* at 668.

We therefore conclude that each of the major adjudicatory bodies in the Division, the appeal tribunals as well as the board of review, may be considered an "agency head" for the purposes of the Office of Administrative Law statute since each is empowered to render a complete adjudication of the contested

---

[6]The appeal tribunal has an independent statutory basis for its authority to hear and decide contested claims in the Division. This distinguishes it from administrative law judges, who are the statutory successors of nonstatutory hearing examiners or "presiding officers" under the APA, and possess much more limited decisional responsibility. See, *e. g., N.J.S.A.* 43:21-6(d) and 52:14F-5(n). It is the statutory foundation of the appeal tribunal, providing complete adjudicatory authority to decide as well as hear contested cases, that serves to give it the status of an "agency" for purposes of the statute. Thus, any similarity between the two entities, adverted to by the dissent, *post* at 667-668, is not significant in this context.

matters at its respective administrative tier and, at that level, constitutes "the highest authority . . . authorized or required by law to render an adjudication in a contested case." *N.J.S.A.* 52:14B–2(d). The appeal tribunal, which by statute is empowered to "hear and decide" contested cases and in practice does not subdivide its adjudicatory functions, would fall within the scope of the statutory exclusion of *N.J.S.A.* 52:14F–8(b). The exclusion of the adjudication of the contested cases of the appeal tribunal comports with the intendment of the legislative scheme so long as the person constituting the appeal tribunal in practice undertakes *both* to hear *and* decide the contested cases before it. See, *e. g., In re Orange Savings Bank*, 172 *N.J.Super.* 275, 283, 286 (App.Div.1980).

### III

Appellant has made the additional argument that the Legislature must have intended the inclusion of contested unemployment compensation claims under the OAL because this would fulfill the paramount legislative purpose of overcoming bias in the adjudications of quasi-judicial administrative agencies. Unless, it is asserted, the hearings of contested unemployment compensation cases in the Division are conducted by independent administrative law judges under the direct authority of the Director of the OAL, the bias that is presumed to attach to the subordinate agency employees, acting as hearing examiners, will not be overcome and the objectives of the statutory reform program will be frustrated.

There is no question, as we have already acknowledged, that the primary statutory purpose of the legislation establishing the OAL was the elimination or reduction of agency bias in the decisional process of State quasi-judicial agencies. *E. g.,* Sponsor's Statement, *supra* ; Committee Statement, *supra* ; Public Hearings, *supra* at 4, 8–12, 15, 17. See also *Mazza v. Cavicchia, supra,* 15 *N.J.* at 536 (Jacobs, J., dissenting); "Independent Corps of Hearing Examiners," 98 *N.J.L.J. Index* 20 (Jan. 9, 1975).

We in no way denigrate this real concern. The exclusion provided in *N.J.S.A.* 52:14F–8(b) should not be .construed or applied so that the evils sought to be conquered by the new law continue to survive. It cannot be ignored, however, that the Legislature, while endeavoring to sanitize administrative hearings, in no way sought to erode or weaken the essential stature, structure and function of state administrative agencies. The furtherance of the fundamental statutory duties and regulatory responsibilities of administrative agencies, the preservation of agency integrity and autonomy, and the continued need for and application of experience and expertise in the administrative adjudicatory process were all important desiderata encompassed by this major governmental reform designed generally to improve the quality of justice and uplift administrative law in the State.

The *N.J.S.A.* 52:14F–8 exception was carved out so that these objectives would not be submerged by the OAL's laudatory commitment to extirpate potential agency bias in administrative hearings. Hence, with respect to a few firmly established and highly specialized agencies, where perhaps the problem of agency bias was not thought to be patent or excessive or was outweighed by other considerations, the Legislature specifically excluded the conduct of their hearings in contested cases from the coverage of the OAL. See *N.J.S.A.* 52:14F–8(a); Sponsor's Statement, *supra*. These objectives were also served by the more general exclusion of subsection b of *N.J.S.A.* 52:14F–8 applicable to *any* agency in which the decisional officer undertakes to hear contested cases and thus exercises full and complete adjudicatory responsibilities. At the root of this exemption is the legislative insight that administrative adjudication should not be viewed as an isolated agency function, or removed from the larger framework of agency regulation, or divorced from the general jurisdictional responsibilities of the agency. *Ante* at 657.

We would add that it does not follow that the problems of agency bias even in the genre of adjudications contemplated by

*N.J.S.A.* 52:14F–8(b) were disregarded by the Legislature. In the case of an agency like the Division of Unemployment and Temporary Disability Insurance, the Legislature might well have believed that concerns for administrative bias already were adequately addressed by the unemployment compensation law which provides for impartiality in the administrative process.[7]

## IV

For the foregoing reasons, we now hold that the hearing of contested unemployment compensation cases within the Division of Unemployment and Temporary Disability Insurance by the appeal tribunals and board of review is excluded from the jurisdiction of the Office of Administrative Law under *N.J.S.A.* 52:14F–8(b) so long as such hearings continue to be conducted directly and individually by the persons who have been appointed to each agency and constitute its decisional officers.

Affirmed.

PASHMAN and POLLOCK, JJ., dissenting.

We agree with the majority that hearings in contested unemployment insurance claims before the Board of Review are conducted by "the head of the agency" and thus are excluded from the jurisdiction of the Office of Administrative Law (OAL) under *N.J.S.A.* 52:14F–8(b). However, we disagree with the majority's conclusion that this exemption also applies to claims

---

[7] As required by federal law, the Director's power to appoint all personnel, including attorneys and experts, is subject to civil service requirements. *N.J.S.A.* 43:21–11(d). "[A]ll positions" are required to "be filled by persons selected and appointed on a nonpartisan merit basis from lists of eligible persons" under civil service. *Id.* In particular, appeal tribunals are required to be "impartial" and their appointment based on merit pursuant to the Civil Service statutes. *N.J.S.A.* 43:21–6(d) (as amended by *L.*1977, *c.* 307, § 3, effective January 1, 1978, almost contemporaneously with the passage of the OAL statute). Similarly, board of review members must be representative of both employer and employee interests, appointed strictly on the basis of merit according to a "civil service eligible list," and are specifically disqualified in any case in which he or she has an interest. *N.J.S.A.* 43:21–10(d).

heard by the appeal tribunal. Because the majority's holding concerning the appeal tribunal disregards the plain language of the statute and substitutes a dangerously broad scheme of exemptions for the one expressly created by the Legislature, we dissent.

This departure from the statutory scheme is especially troubling because the OAL Act, so recently enacted, was designed "to improve the quality of justice with respect to administrative hearings." *Committee Statement to S. 766—L. 1978, c. 67.* We have no doubt that the majority approves of this goal. Yet in this Court's very first opportunity to rule on the jurisdiction of the Office of Administrative Law, the majority has chosen to restrict that jurisdiction, a result attainable only by disregarding the terms of the act itself.

The majority's narrow reading of the OAL Act is regrettable. The OAL Act is an important part of the salutary reform of administrative law and procedure which the Legislature has undertaken in recent years. The Administrative Procedure Act (APA), *N.J.S.A.* 52:14B–1 *et seq.*, was enacted in 1969 with the purpose of assuring to interested parties notice and the opportunity to be heard in administrative proceedings. This reform was carried significantly further in 1978 with the passage of the OAL Act. The aim of the OAL Act was to provide impartiality and objectivity in agency hearings by greatly reducing the number of instances in which such hearings were conducted by hearing officers who were subordinate, and possibly subservient, to agency heads. It achieves this end by replacing hearing officers with independent administrative law judges.

So strongly did the Legislature perceive this need and the desirability of creating a uniform system of administrative adjudication throughout State agencies that the OAL Act creates only two classes of exemptions from the jurisdiction of the Office of Administrative Law. *N.J.S.A.* 52:14F–8. It provides that "[u]nless a specific request is made by the agency," administrative law judges shall not be assigned to hear contested cases with respect to, first,

[t]he State Board of Parole, the Public Employment Relations Commission, the Division of Workers' Compensation, the Division of Tax Appeals, or to any agency not within [N.J.S.A. 52:14B-2(a)]. [N.J.S.A. 52:14F-8(a)]

This exclusion plainly does not apply to contested unemployment insurance claims in the Division of Unemployment and Temporary Disability Insurance.[1]

The second statutory exclusion, relied upon by the majority in this case, is for

[a]ny matter where the head of the agency, a commissioner or several commissioners, are required to conduct, or determine to conduct the hearing directly and individually. [N.J.S.A. 52:14F-8(b)]

The Board of Review is statutorily empowered "to act as a final appeals board" within its agency, the Division of Unemployment and Temporary Disability, "in cases of benefit disputes." N.J. S.A. 43:21–10(d). In this regard it is "the head of the agency," a term defined in the APA as "the individual or group of individuals constituting the highest authority within any agency authorized or required by law to render an adjudication in a contested case.". N.J.S.A. 52:14B–2(d). Therefore, cases presently heard by the Board of Review are excluded from the jurisdiction of the OAL by the terms of the statute.

A similar conclusion with regard to an appeal tribunal cannot be squared with the plain terms of the exemptions adopted by the Legislature. Consequently, in order to support its holding, the majority is forced to rely on a number of untenable assumptions.

The assumption central to its argument is that the statutory exclusion provided in N.J.S.A. 52:14F–8(b) is intended to apply

---

[1]It is certainly arguable that the rationale given for these specific exemptions, that the enumerated agencies "are specialized entities devoted solely to hearings in highly specialized areas," Committee Statement to S. 1811 (1976) at 3, applies as much to the Division of Unemployment and Temporary Disability Insurance as it does, say, to the Division of Workers' Compensation. However, the Legislature declined to include the Division of Unemployment and Temporary Disability within the list of specifically exempted agencies of subsection (a) although it must certainly have been aware that it could have done so.

to agency adjudications where hearing and decisional functions have not been separated. Although this might have been a reasonable basis for excluding certain administrative matters from the jurisdiction of the OAL, it was not the basis chosen by the Legislature.

By the express terms of *N.J.S.A.* 52:14F–8(b) the Legislature excluded from the jurisdiction of the OAL only those administrative matters in which "the head of the agency," *i. e.*, the officer within the agency with the *final* authority on the subject, elects or is required to hear the matter. The exclusion does not apply when the matter is heard by a lower-level hearing officer within the agency who is not empowered to render a final decision.

The key to the majority's analysis is the definition of "agency." This term is defined in the APA in pertinent part as

... each of the principal departments in the executive branch of the State Government, and all boards, divisions, commissions, agencies, departments, councils, authorities, offices or officers within any such departments now existing or hereafter established and *authorized by statute to make, adopt or promulgate rules or adjudicate contested cases* .... [*N.J.S.A.* 52:14B–2(a) (emphasis added)]

Does an appeal tribunal fall within this definition? The Commissioner concedes that the so-called "appeal tribunal" is actually "many separate tribunals each consisting of a single examiner." Nonetheless, the majority concludes that each of these one-person tribunals is a separate "intermediate agency." The majority concedes that the determinations of the appeal tribunal "may be appealed to a higher level." *Ante* at 654. Nonetheless, the majority believes that the appeal tribunal is also a "head of agency" excluded from the OAL Act because a tribunal is "empowered to render a complete adjudication of the contested matters at its respective administrative tier." "*[A]t that level*," the majority says, an appeal tribunal constitutes " 'the highest authority ... authorized by law to render an adjudication in a contested case.' *N.J.S.A.* 52:14B–2(d)." *Ante* at 659–660 (emphasis added). Yet even within its own "administrative tier" the appeal tribunal does not render "a complete

adjudication," because its decision, if not appealed within ten days, "shall be deemed to be the final decision *of the board of review,*" *N.J.S.A.* 43:21–6(c) (emphasis added). Even where the contested case is not appealed to the Board of Review, the final decision is attributed to that higher authority rather than the appeal tribunal.

The majority's analysis thus does violence to the meaning and intent of the statute. An appeal tribunal simply is not an "agency" or "the head of an agency," either within the statutory definition of those terms or according to their common usage. The majority's holding will exempt from the jurisdiction of the OAL Act every low-level administrative hearing officer empowered to hear cases and to make initial determinations and thereby will greatly abridge the scope of the OAL Act in a way which the Legislature could not have intended. Paradoxically, the majority recognizes that the "signal improvement" of the act was "the establishment of a corps of independent hearing officers, referred to as 'administrative law judges.'" *Ante* at 649. But by its holding today—the first to construe the exclusionary provisions of the act—the majority engages in a tortuous exercise in statutory construction to reach a result unsupported by the statute which vastly reduces the role of administrative law judges in administrative decision-making in New Jersey.

It is not difficult either to understand or to rationalize the Legislature's exclusionary scheme. It leads to the sensible result that when matters are heard and decided by the highest decision-making authority in the agency, the use of administrative law judges will not be required. In these cases, the Legislature believed that such high-level agency personnel could be expected to provide a fair and procedurally correct hearing and would, in addition, bring their expertise in the area of regulation to bear on the case. However, in matters previously heard by lower-level hearing officers, whose decisions were appealable to higher authority within the agency itself, the Legislature plausibly concluded that a fairer administrative

process would result if those hearing officers, often part-time employees and often participating in investigative or prosecutorial functions as well as hearing adjudications, were replaced by members of a full-time corps of expert administrative law judges. In addition, the Legislature intended to establish, as far as practical, a uniform system of administrative adjudication among the many agencies within State government. It considered other exclusions from the OAL Act but decided against them. The majority now wishes to substitute its wisdom for the Legislature's reasoning.

Our conclusion is further buttressed by the striking similarity of the relationship between an administrative law judge and the head of the agency, on the one hand, and that between the appeal tribunal and the Board of Review, on the other. The recommended decision of an administrative law judge is "deemed adopted as the final decision of the head of the agency" if the head of the agency does not modify or reject the decision within the statutory period. *N.J.S.A.* 52:14B–10(c). Similarly, as has been noted above, *supra* at 666, the decision of an appeal tribunal is "deemed to be the final decision of the board of review" unless further appeal is initiated by either of the parties or by the Board of Review. *N.J.S.A.* 43:21–6(c), (e). This parallelism not only lends support to the conclusion that the Legislature intended administrative law judges to take the place of the appeal tribunals, but also undermines any argument that some imagined differences between the two positions would make the substitution of administrative law judges for appeal tribunals infeasible.

We hasten to add that we recognize the practical difficulties which might result if the case load presently handled by the appeal tribunals were shifted to administrative law judges.[2] It may well be that, all things considered, it would be better to

---

[2]The Commissioner states that in 1979, 41,888 appeals were filed with the appeals tribunal and that 34,784 decisions were rendered.

leave the present system undisturbed. It may even be that the Legislature, if squarely faced with that question alone, would exempt contested unemployment insurance claims determined by the appeal tribunal from the jurisdiction of the Office of Administrative Law. But the decision belongs to the Legislature, not to this Court. The present statute does not admit the construction which has been given to it by the majority in this case—a construction which threatens to undermine the OAL Act in its infancy.

We dissent from the judgment of the majority and would hold that, under the terms of *N.J.S.A.* 52:14F–1 *et seq.*, claims now heard by the appeal tribunal of the Division of Unemployment and Temporary Disability must be transferred to the jurisdiction of the Office of Administrative Law to be heard by administrative law judges.[3]

*For affirmance*—Justices SULLIVAN, CLIFFORD, SCHREIBER and HANDLER—4.

*For reversal* —Justices PASHMAN and POLLOCK—2.

---

[3]In order to give the OAL an opportunity to prepare to handle this great increase in case load, and to provide the Commissioner with an opportunity to seek legislation exempting the appeal tribunals from the jurisdiction of the OAL, we would delay the effective date of such a decision for a reasonable period.