647 A.2d 1312

WILLIAM F. MORLEY, PLAINTIFF–APPELLANT, v.
STATE OF NEW JERSEY, DEPARTMENT OF
LABOR, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 20, 1994—Decided May 13, 1994.

Before Judges SHEBELL and LANDAU.

*Thomas B. Lewis* argued the cause for appellant (*Stark and Stark,* attorneys; *Mr. Lewis,* of counsel and on the brief).

*Christopher L. Leavey,* Deputy Attorney General, argued the cause for respondent (*Deborah T. Poritz,* Attorney General, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel, and *Mr. Leavey,* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

William F. Morley appeals from a Final Administrative Action of the Merit System Board (Board), dated February 3, 1993, which adopted the recommended findings of an Administrative Law Judge (ALJ) that he committed insubordination and conduct unbecoming a public employee. The Board rejected, however, the ALJ's recommended penalty of a letter reprimand and reinstated the three day suspension initially imposed by the New Jersey Department of Labor. We affirm.

Morley, a New Jersey attorney, was appointed in 1983 through Civil Service as a private plan hearing officer in the Department of Labor, Division of Unemployment and Temporary Disability Insurance, (Division) and assigned to its Office of Administrative Appeals. Since 1987 he has worked as a private plan hearing officer presiding over, and deciding, adversarial hearings on issues of entitlement to disability benefits. The position requires a law degree and three years of experience in conducting general administrative hearings and/or legal research. Morley was the only private plan hearing officer in the Division, although there are other hearing officers who decide like issues respecting the State plan of disability benefits.

In September 1990, the Director of the Division of Unemployment and Temporary Disability Insurance, Michael P. Malloy, ordered Morley to report directly to him. Morley had previously reported to the Chief Appeals Examiner, who in turn reported to Malloy. Morley objected to the change in reporting requirements.

Malloy testified that when Morley began reporting directly to him, he became concerned with the large proportion of settlements to hearings which suggested to Malloy that Morley was pressuring settlements in order to avoid holding plenary evidentiary hearings. Malloy explained his concern:

> This, of course, resulted in delays in the processing of cases and some of the tactics that he used in his settlement process again gave me reason to pause about whether or not people were being afforded due process.

Between 1987 and May 1991, Morley handled approximately 300 cases, of which roughly two-thirds settled.[1]

---

[1] The Division is responsible for resolving disputes of persons claiming disability benefits under an approved private plan. *N.J.S.A.* 43:21–50. Once a claim is filed, the Division must conduct an "investigation, including informal hearings, as it deems proper ... [and] shall have the authority to make procedural rules and regulations providing for a fair and impartial hearing, and shall designate one or more hearing officers." *N.J.S.A.* 43:21–50(a). The goal of the investigation and informal hearing is "to determine the facts and settle the issues." *N.J.A.C.* 12:18–2.6(b); *N.J.A.C.* 12:18–2.41. Thus, only if not settled is the matter referred to the private plan hearing officer for a "full, fair and impartial

The charges leading to the instant appeal, however, concern Morley's failure to comply with direction of superiors in the Department of Labor regarding two private plan benefit cases: (1) *In the Matter of Steven Trent,* Docket Number HOPP91–19; and (2) *In the Matter of Linda Whitesell,* Docket Number HOPP91–22.

In a letter to Morley, Trent's lawyer, Daniel Waldman, complained: (1) that Morley called his office and told his secretary that he was unprofessional; (2) that Morley attempted to settle the matter directly with Waldman's client while Waldman was not present; and (3) that Morley told Waldman's client that Waldman was "unethical" and would be reported to the [Bar Association] Ethics Committee. Waldman's letter requested that Morley disqualify himself as hearing officer in the case and that another hearing officer be appointed. A copy of the letter was sent to Malloy.

Malloy met with Morley regarding the letter and asked Morley to "reconcile his differences with Waldman." Morley then responded to Waldman's letter, rejecting most of his complaints as "without merit." Morley also put Waldman "on notice that this Tribunal is bound by the Code of Judicial Conduct and the Rules of Professional Responsibility apply to attorneys involved in Private Plan cases." He concluded by warning that "[a]ny further non-appearance on the part of an attorney from your office will not be accepted."

Malloy opined that Morley's letter was not a dignified response from a quasi-judicial officer representing the Division. He received two letters from Waldman, stating that Morley's response was "unsatisfactory", and requesting that Malloy remove Morley as the hearing officer in the *Trent* matter. On May 2, 1991, Morley unilaterally issued an "Interim Decision" in the *Trent* case,

---

hearing." *N.J.A.C.* 12:18–2.6(c); *N.J.A.C.* 12:18–2.42 and –2.43. Presumably the number of settlements achieved after failure of the initial informal settlement proceedings led to Malloy's concern.

scheduling a hearing for May 21, 1991, and stating that he would preside over the hearing. The decision concluded, *"[t]his Interim Decision constitutes final agency action on the issue of the Presiding Officer."* (Emphasis in original).

During the same period, Linda Whitesell, a *pro se* claimant in one of the cases pending before Morley, called Malloy's office to complain that Morley had treated her unfairly. Whitesell also wrote a letter to Malloy, dated April 16, 1991, alleging that Morley was pressuring her to settle the case against her employer.

On May 6, 1991, Malloy notified Morley that Maryann Polaski would be his immediate supervisor and that he should report directly to her in the future. Morley renewed his suggestion that he should be supervised by an attorney such as a Supervising Compensation Judge or the Director of Legal Management, rather than an administrator who was not legally trained. On that date, Morley also sent Malloy a handwritten memorandum stating that he had issued an "Interim Decision" in the *Trent* case, and that any "[f]urther action by Mr. Waldman lies *not* with DOL but with the Appellate Division Superior Court."

Malloy referred the *Trent* and *Whitesell* complaints to Polaski, who was about to assume the office of Administrator, Unemployment and Disability Insurance. Polaski instructed her staff to retrieve the *Whitesell* file from Morley, so that she could review it to determine whether there was any substance to the allegations or whether it was just a "disgruntled claimant." When Polaski received no response from Morley, she asked Malloy's office to retrieve the file. After several requests, Malloy's office was able to get the file, but not tape recordings of the preliminary hearings.[2] Polaski asked her staff to secure the tapes, but Morley failed to respond to their request.

As a result of Morley's refusal to cooperate with Polaski's investigation, Polaski notified him on May 8, 1991, that he was

---

[2] No substantive hearings had yet been held in either matter.

relieved of all responsibilities in the *Trent* and *Whitesell* cases, and that he should prepare the files to be turned over to another hearing officer. Polaski testified that her reason for removing Morley was only to insure both the actuality and the perception of fairness and impartiality by the litigants. Her memorandum to Morley made it clear, however, that the reassignment was not intended to "reflect any determination or judgment as to the merits" of the Waldman and Whitesell requests.

Morley responded that he would not comply with Polaski's direction and that he would proceed with hearings in the *Trent* and *Whitesell* cases, as scheduled, unless a Judge of the Appellate Division issued a restraining order which would prevent him from doing so. He stated that any appeals must be directed to the Appellate Division.[3] Copies of his memorandum were sent to the Commissioner of Labor, Deputy Commissioner, and Linda Flores, a lawyer in the Deputy Commissioner's office.

Shelly Friedman, Polaski's executive assistant, testified that on the night of May 8th, the parties in the *Whitesell* case were notified by her office that the May 9th hearing had been canceled. Nevertheless, at approximately 6:30 p.m. that evening, Morley sent a mailgram to Whitesell informing her that the May 9th hearing would proceed as scheduled. His office also contacted Richard J. Suminski, the employer's attorney, to inform him that the hearing would proceed on May 9th, irrespective of other notices.

During the May 9th hearing, responding to specific prompting by Morley on the record, Suminski requested that Morley retain all documents pertaining to the case pending further proceedings.

On May 14, 1991, Polaski notified Morley that the Deputy Commissioner's office had confirmed Polaski's authority to remove him from the contested cases. She ordered Morley "to compile all

---

[3] Morley's position was that as the designated "head of agency" under *N.J.S.A.* 43:21–50 and *N.J.S.A.* 52:14B–2, he was answerable only to the Appellate Division in a matter where his impartiality was brought into question.

materials pertaining to the two cases" and give them to her staff by May 17th.

The next day Malloy, Polaski, and Morley met to discuss the situation. Malloy informed Morley that the Attorney General's office had confirmed Polaski's authority to reassign the *Trent* and *Whitesell* cases to another hearing officer. According to Polaski, they attempted to explain to Morley the difference between intervening in a hearing officer's final administrative decision, which is appealable to the Appellate Division [4], and the actual conduct of the hearing, i.e. the right of the Administrator to assign and reassign cases.

At the meeting, Morley requested that an attorney from the Attorney General's office directly inform him that Polaski had the authority to reassign him. Morley testified that he was not given anything in writing, nor was he pointed to any authority which supported the ability of a non-lawyer to remove him from the cases once they had been assigned to him. Morley also said that he was concerned because Suminski had objected to Polaski's intervention in the case. In addition, Morley served Malloy and Polaski with a "Conscientious Employee Protection Act Report" requesting that they cease "interfer[ing] with my independent adjudication, as Head of Agency, in accordance with a Supreme Court decision, of Private Plan cases; Appeals from a Final Decision are directed only to the Appellate Division".

By memorandum dated May 17, 1991, Morley informed Polaski that he was granting Suminski's request to retain all records of the *Whitesell* case in his possession, and that with the consent of appropriate counsel, he would place the material in the personal custody of the "Deputy Commissioner or the Chief Judge to be held in escrow pending a determination of the issues by the

---

[4] *N.J.S.A.* 43:21–50; *see Unemployed–Employed Council of N.J. v. Horn*, 85 *N.J.* 646, 428 *A.2d* 1305 (1981).

Committee".[5]  Morley said that if he turned over the tapes to Polaski he would be open "to a charge of ethical misconduct by Mr. Suminski."

Polaski did not respond to this memo.  All the materials, including the tapes, were eventually turned over to Polaski, with a memo attached stating that the turnover was "without prejudice to all rights of all parties."

On May 23, 1991, Morley was served with a Preliminary Notice of Disciplinary Action for his refusal to comply with the request to turn over the files and for his attempt to proceed with the *Whitesell* case despite a directive that he had been relieved from all responsibility for that case.  The Notice charged Morley with insubordination and conduct unbecoming a public employee (*N.J.A.C.* 4A:2–2.3(a)(1) and (2)) and listed ten days' suspension as a possible discipline.

Morley exercised his right to a hearing before a departmental hearing officer.  The matter was heard within the Department of Labor by Employee Relations Hearing Officer/Coordinator Leonard J. Talarico, who, Morley complains, was disbarred on consent in Pennsylvania.  After three days of hearings, Talarico issued a report on January 24, 1992, affirming the charges and recommending three days of suspension.  Based on an independent review of the entire record, on January 27, 1992, Robert J. Yokavonus, Assistant Commissioner, as the "Administration Appointing Authority", adopted Talarico's report and recommendation.

On Morley's appeal to the Board, the matter was referred to the Office of Administrative Law for a *de novo* hearing.  The ALJ found Morley guilty of insubordination and conduct unbecoming an employee.  The ALJ concluded:

---

[5] The Supreme Court Committee on Ethical Conduct.  The record does not disclose whether intervention by this committee, or other similar body, was ever sought.

> Appellant contends that because certain attorney and judicial ethical considerations superimpose themselves on the validity of the order respondent is alleged to have defied, he should not be found to be insubordinate or to have acted in a manner unbecoming to a public employee. *I conclude that this is a pretense designed to excuse the fact that appellant simply would not accept the fact that his superior, Mr. Malloy, and later Ms. Polaski, who were not attorneys had determined to remove him from two private plan cases and to reassign the cases to another hearing officer. Because they were not attorneys, Mr. Morley declined to accept that they could reassign a case from him....*

The ALJ recommended that the three day suspension be rescinded and that a letter of reprimand instead be placed in Morley's personnel file.

Morley filed exceptions, and the appointing authority filed cross-exceptions. On February 3, 1993, the Merit System Board issued its Final Administrative Action which adopted the ALJ's findings of fact. The Board rejected the ALJ's reduction in penalty, however, and reinstated the three day suspension.

On appeal, Morley argues: (1) that Polaski and Malloy did not have authority to interpose in the adjudication of contested cases open and pending before him as "head of agency" and that the Merit Systems Board abused its discretion in failing to protect his independence; (2) Polaski was not his lawful supervisor; (3) that use of a disbarred attorney to judge his professional conduct was improper; (4) that his constitutional rights to confront an accuser were violated; (5) that the Board and ALJ failed to recognize legal procedures for interlocutory appeals from actions of a state administrative officer; and (6) that his role in encouraging the parties to compromise contested private plan cases was proper.

■ Upon careful review of the briefs, appendices, and the transcripts, we conclude that the findings of insubordination and conduct unbecoming a public employee are supported by sufficient credible evidence on the record, and that the three day suspension imposed was not arbitrary and capricious. *See In re Township of Warren,* 132 *N.J.* 1, 28, 622 *A.*2d 1257 (1993); *Newark v. Natural Resource Coun. Dept. Env. Prot.,* 82 *N.J.* 530, 539, 414 *A.*2d 1304 (1980), *cert. denied,* 449 *U.S.* 983, 101 *S.Ct.* 400, 66 *L.Ed.*2d 245

(1980); *Campbell v. Department of Civil Service,* 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963).

■ As the Director of the Division, Malloy had authority to remove Morley as hearing officer in both cases. Polaski, as Administrator and Morley's direct supervisor, was authorized to reassign the cases, particularly with Malloy's approval. Malloy was charged with responsibility for administering the "Temporary Disability Benefits Law", *N.J.S.A.* 43:21–25 to 43:21–56, which governs both State and private plan disability benefits [6]. In so doing, he had a duty to ensure that claimants are afforded a "full, fair and impartial" hearing. *N.J.S.A.* 43:21–50(a). When allegations were made by claimants that Morley was not conducting a fair and impartial hearing, it was within the Director's powers to ask Polaski to investigate the matter. One need not be a lawyer to conduct such inquiry, particularly where, as here, legal counsel was available. Given Morley's adamant rejection, which made it impossible to determine whether the claimants' charges might have merit, it was entirely appropriate that Morley be removed as hearing officer for the questioned cases, and thereafter disciplined.

We note that neither Malloy nor Polaski ever discussed the substantive merits of either the *Trent* or *Whitesell* cases with Morley. *See Campbell, supra,* 39 *N.J.* at 577, 189 *A.*2d 712. Indeed, the Board concedes that "when Morley issues findings of fact and final orders regarding private plan hearings, he acts as 'head of agency'," whose decisions are appealable only to this court. *See Unemployed–Employed Council of N.J. v. Horn,* 85 *N.J.* 646, 428 *A.*2d 1305 (1981); *N.J.A.C.* 12:18–2.45; *N.J.S.A.* 52:14B–2(d). As we see it, however, Polaski's action in reassigning the cases in these circumstances was administrative in nature and rested within the sound discretion and duty of the agency to insure fair and impartial proceedings.

---

[6] See footnote 1 *supra.*

Moreover, under *N.J.S.A.* 43:21–50, the Director of the Division is given the authority to designate private plan hearing officers. The power to designate is correlative with the power to undesignate, provided this power is not abused for the purpose of intervening into, or overruling, substantive determinations. Interestingly, the Administrative Code provides like power to the Director of the Office of Administrative Law who designates administrative law judges. *See N.J.A.C.* 1:1–14.12(d) and 1:1–14.10(k)(1).

Every administrative litigant who questions impartiality of a hearing officer is not automatically entitled to appointment of an alternate. However, the Director is entitled to explore whether there is any basis for the charge, and may not be impeded in that effort by the affected hearing officer so long as the inquiry is so limited, and does not trespass into the merits.

■ Morley contends that Polaski was not his lawful supervisor because he was not given "written transfer orders" when Polaski was made his supervisor, and thus could not reassign cases from him. We disagree. Morley was not "transferred." Through all the events leading up to the insubordination charges, he was a private plan hearing officer. *See N.J.A.C.* 4A:4–7.1 (defining transfer as the "movement of a permanent employee between organizational units within the same governmental jurisdiction"). While an assignment of an employee to a new supervisor is technically a "reassignment", such reassignments are left to the discretion of the head of the organizational unit. *N.J.A.C.* 4A:4–7.2. Morley does not challenge the good faith of the reassignment, *N.J.A.C.* 4A:4–7.7, and we do not see it as an abuse of discretion. Accordingly, Polaski was Morley's lawful supervisor at the time of the incidents leading to the insubordination charges.

Morley also argues that the use of a disbarred Pennsylvania attorney to preside over the internal Departmental disciplinary hearing was prejudicial error. We need not dwell on this argument because a plenary *de novo* hearing was held before an ALJ. *See Campbell, supra,* 39 *N.J.* at 579, 189 *A.*2d 712; *In re Darcy,*

114 *N.J.Super.* 454, 461, 277 *A.*2d 226 (App.Div.1971). The ALJ's decision was based on a detailed analysis of the evidence and testimony which was presented during three full days of hearings. Moreover, Morley has identified no specific actions of Talarico which prejudiced him.

Morley's contention that his constitutional right to confront his accuser was violated by Polaski's refusal to show him Whitesell's complaint distorts the nature of the disciplinary proceedings. Morley was not disciplined for his handling of the *Whitesell* case. Although Whitesell's complaint triggered Polaski's demand for the file, it was Morley's refusal to comply with his supervisor's directives to facilitate investigation of the complaint which led to the disciplinary charges. Regardless of whether the Whitesell complaints against Morley might be substantiated in another forum, *Polaski* was the accuser responsible for Morley's disciplinary charges. Morley was afforded the opportunity to cross examine Polaski at the ALJ hearing.

The above conclusions make it unnecessary to consider Morley's other arguments.

Affirmed.